MERRILL LYNCH, PIERCE, FENNER & SMITH, Appellant,

v.

Kirston and Amanda EDDINGS, Appellees.

Randy L. RAMEY, Appellant,

v.

James R. EDDINGS, et al., Appellees.

Nos. 10–92–047–CV, 10–92–054–CV.

Court of Appeals of Texas, Waco.

Sept. 16, 1992.

Rehearing Denied Oct. 7, 1992.

Coyt Randal Johnston and Robert L. To-bey, Johnston & Budner, P.C., Dallas, for appellant Randy L. Ramey.

Gregory D. May and Mary Beth Marshall, Decker, Hardt, Kopf, Harr, Munsch & Dinan, P.C., Dallas, for appellant Merrill Lynch, Pierce, Fenner & Smith.

Van E. McFarland & James D. Pierce, Van McFarland & Associates, Houston, for appellees Kirston and Amanda Eddings, James R. Eddings, et al.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Merrill Lynch and Randy Ramey, an employee of Merrill Lynch, appeal under article 238-2, § A(1) and Rule 42 from the

court's orders denying their motions to compel arbitration. *See* TEX.REV.CIV.STAT. ANN. art. 238–2, § A(1) (Vernon 1973); TEX.R.APP.P. 42. Because we find that the court should have ordered the parties to submit their disputes to arbitration, we will reverse and remand with instructions.

## PROCEDURAL HISTORY

In 1980 James R. Eddings established a trust for the benefit of Kirston A. Eddings and Amanda G. Eddings, his daughters. He appointed Jimmy R. Payne as trustee and gave him broad authority to manage and invest the trust's property, contract on behalf of the trust, and settle disputes "by arbitration or otherwise." Using that authority, Payne signed a Cash Management Account Agreement with Merrill Lynch in 1988. In 1990 a disagreement arose between James Eddings and Payne about Payne's handling of the trust. After Merrill Lynch liquidated the account at Eddings' direction, Payne withdrew the proceeds, which were deposited to Eddings' credit in a bank in Athens.

The Bank of Troy sued Payne, the trust, Merrill Lynch, and others, alleging that the bank held a security interest in certain shares previously held in the Merrill Lynch account and that Merrill Lynch converted the shares by liquidating them. Merrill Lynch filed a third-party action against Eddings for indemnity for any damages that might be awarded to the bank and for a constructive trust over the proceeds of the account. After Eddings filed a counterclaim against Merrill Lynch and a third-party action against Ramey, Merrill Lynch filed a motion to compel arbitration.

Eddings, joined by his daughters, amended his counterclaim and cross-claim to assert claims against Ramey and other parties to the suit. By the amendment, Eddings abandoned his claims against Merrill Lynch and Ramey. Those claims were asserted only on behalf of the daughters as beneficiaries of the trust. In response, Merrill Lynch amended its motion to compel arbitration of the daughters' claims. Ramey filed a separate motion to compel arbitration of the claims asserted by Eddings and his daughters.

By separate orders, the court denied the motions to compel arbitration, resulting in separate appeals.

## WAS THE RECORD TIMELY FILED?

The order denying Merrill Lynch's motion to compel arbitration was signed on February 28, 1992. The record was due in this court thirty days thereafter. *See* TEX.R.APP.P. 42(a)(3). The record was tendered to the clerk on April 15, 1992, but was not filed because it was not timely. On April 17 Merrill Lynch filed a motion to extend the time, and the Eddingses responded with a motion to dismiss or affirm on grounds that the record was not timely filed under Rule 42(a)(3) and that the motion was not timely filed under Rule 54(c). *See id.* 42(a)(3), 54(c). We denied the motion to dismiss and granted the motion to file the record late. Because it could be dispositive of Merrill Lynch's appeal, we will address the Eddingses' cross-point asserting that we cannot consider the record because neither the record nor a motion to extend the time to file the record was timely filed.

In support of their contention, the Eddingses cite *Dobson v. Short*, 654 S.W.2d 703 (Tex.App.—Houston [14th Dist.] 1982, no writ) and *Turner v. H.E. Butt Grocery Co.*, 645 S.W.2d 936 (Tex.App.—Austin 1983, no writ). Each of these cases, decided prior to the adoption of the Rules of Appellate Procedure, held that Rule 21c, now repealed, required that a motion to extend the time to file the record in an accelerated appeal must be filed within fifteen days after the due-date. We believe, however, that the appellate rules abrogated those holdings.

Rule 385 of the Rules of Civil Procedure, now repealed, controlled accelerated appeals. Subsection (d) provided in part:

Failure to file either the record or appellant's brief within the time specified, un-

less reasonably explained, shall be ground for dismissal or affirmance under Rule 387, but shall not affect the court's jurisdiction.

TEX.R.CIV.P. 385(d) (Vernon 1985). The language of Rule 42, which replaced the quoted part of former Rule 385(d), provides:

Failure to file either the record or appellant's brief within the time specified, unless reasonably explained, shall be ground for dismissal or affirmance under Rule [387] 60, but shall not affect the court's jurisdiction *or its authority to consider material filed late.*

TEX.R.APP.P. 42(a)(3) (emphasis added).

*Dobson* relied on a provision of Rule 437 of the Rules of Civil Procedure (now Rule 83 of the Rules of Appellate Procedure) that explicitly prohibited an appellate court from enlarging the time for filing the transcript and statement of facts except under Rule 21c (now Rule 54(c) of the appellate rules). *Dobson,* 654 S.W.2d at 704. Thus, except for the inclusion of the language "or its authority to consider material filed late" in Rule 42—language that we believe to be significant—the rationale of the *Dobson* case would apply.

█ When it adopted the appellate rules, the Supreme Court undoubtedly had the *Dobson* and *Turner* decisions in mind. Nevertheless, it added language to Rule 42 giving appellate courts authority to consider material filed late and elected not to include a reference to Rule 54(c). TEX.R.APP.P. 42(a)(3). From the plain wording of the present rule, we conclude that the Supreme Court intended to give appellate courts broad authority to allow materials to be filed late in accelerated appeals. Thus, we were correct in denying the motion to dismiss or affirm and in allowing the record to be filed.

We are not persuaded by the additional reasoning of the *Dobson* decision that, like the *Turner* decision, relies on *B.D. Click Co. v. Safari Drilling Corp. B.D. Click Co. v. Safari Drilling Corp.,* 638 S.W.2d 860 (Tex.1982). There, the Supreme Court

held that a motion to extend the time for filing the transcript or statement of facts must be filed within the fifteen-day period under Rule 21c and that the failure to so file deprived the court of jurisdiction. *B.D. Click Co.,* 638 S.W.2d at 862. *B.D. Click Co.,* however, rested on the proposition that the rule accomplished an important purpose by fixing the date on which a litigant could know that a judgment had become final. *Id.* No such compelling necessity arises in an accelerated appeal taken as part of ongoing litigation in the court below. Additionally, former Rule 385(d) and current Rule 42(a)(3) both provide that failure to timely file the record shall not affect the court's jurisdiction.

We acknowledge that this holding conflicts with the only post-rule opinion that our research has revealed on the question. *See Friendship Village v. State,* 738 S.W.2d 12, 15–16 (Tex.App.—Texarkana 1987, writ ref'd n.r.e.). *Friendship Village* involved an appeal from a quo warranto suit, an accelerated appeal under Rule 42. TEX.R.APP.P. 42(a)(2). The Texarkana Court of Appeals, citing Rule 54(c) and *B.D. Click Co.* without further analysis, held that because no motion to extend the time to file the statement of facts was filed within fifteen days of the due date, the statement of facts could not be considered. *Friendship Village,* 738 S.W.2d at 15–16. As we have stated, because of the absence of a reference to Rule 54(c) in Rule 42 and because of the addition of the language giving us authority to consider material filed late, we must disagree with the Texarkana court.

We overrule the cross-point of Kirston A. Eddings and Amanda G. Eddings filed in the appeal brought by Merrill Lynch.

### SHOULD ARBITRATION BE COMPELLED?

We turn to the merits of the appeal. Merrill Lynch and Ramey each contend in a single point that the court erred in denying the motions to compel arbitration.

THE MOTIONS UNDER THE TEXAS ACT

Merrill Lynch and Ramey filed motions to compel arbitration under section A of Article 225, which provides:

On application of a party showing an agreement described in Article 224 of this Act, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration; but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

*See* TEX.REV.CIV.STAT.ANN. art. 225, § A (Vernon 1973). The record does not reflect that Kirston or Amanda Eddings filed any response to Merrill Lynch's motion. James Eddings did not deny that the account agreement existed; rather, he contended that he was not bound by the agreement, not being party to it, and that Merrill Lynch had waived its right to arbitration by filing its initial cross action against him. Kirston and Amanda joined James in a response to Ramey's motion, contending that they were not parties to the account agreement, that Merrill Lynch had waived the arbitration clause, and that Ramey was bound by Merrill Lynch's waiver.

THE AGREEMENT TO ARBITRATE

The rules of the New York Stock Exchange, of which Merrill Lynch is a member, require that controversies between a member and "any other person" shall be submitted to arbitration under rules that the exchange may adopt from time to time. This provision, standing alone, offers no support for compelling arbitration in this case. It does, however, provide the backdrop for the inclusion of compulsory arbitration language in Merrill Lynch's account agreement.

Merrill Lynch and Ramey rely on the account agreement signed by Payne, the trustee of the trust established either by or for the benefit of each appellee. The account agreement provides in part:

I agree, and by carrying an account for me you agree, that ... all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance or breach of this agreement or any other agreement between us, whether entered into prior, on or subsequent to the date of this agreement, shall be determined by arbitration and shall be governed by the laws of the State of New York.

Arbitration proceedings are so favored by Texas law that both our Constitution and statutes provide for the submission of differences to arbitration. *Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740, 743 (1943). A court deciding a motion to compel arbitration must determine whether the parties agreed to arbitrate and, if so, the scope of their agreement. *Merrill Lynch v. Longoria*, 783 S.W.2d 229, 230 (Tex.App.—Corpus Christi 1989, no writ). Thus, two questions must be answered: Is there an enforceable agreement to arbitrate?; Does the agreement encompass the claims asserted? If the court answers each question in the affirmative, it *must* compel arbitration. TEX.REV.CIV.STAT.ANN. art. 225, § A. Although the Eddingses do not question the existence of an agreement to arbitrate, *i.e.*, the account agreement between the trustee and Merrill Lynch, they contend that the agreement is not enforceable against them and that their claims are not covered by the agreement. We will address the reasons they have advanced for not compelling arbitration.

SETTLOR AND BENEFICIARIES

James contends that, as settlor of the trust, he did not sign Merrill Lynch's account agreement and is not bound by it. Likewise, Kirston and Amanda contend that, as beneficiaries of the trust, they did not sign the agreement and are not bound by it.

A party may be bound by an agreement to arbitrate even in the absence of his signature. *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987). An examination of the pleadings that assert the Eddingses' claims against both Merrill Lynch and Ramey reveals that the account agreement is the underlying basis for all of the claims; they would have no claims had the account agreement never been signed by the trustee. If the settlor and beneficiaries of a trust could bring suit independently of the trustee and thereby avoid the arbitration agreement, the strong state policy favoring arbitration would be effectively thwarted. *Cf. J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir.1988). We hold that the settlor and beneficiaries of a trust are bound by a clause in an account agreement to arbitrate the claims arising out of transactions in the trust's account.

RES JUDICATA OR COLLATERAL ESTOPPEL

The Eddingses do not contend on appeal that Ramey is not entitled to the benefit of the arbitration clause. Rather, they contend that, because the court held that Merrill Lynch waived the agreement, Ramey is bound by that decision. A judgment is final for the purpose of issue and claim preclusion, despite the taking of an appeal, unless what is called an appeal actually consists of a trial de novo. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex.1986). We see no reason why the same rule should not apply to interlocutory orders that can be the subject of an appeal. Thus, because Ramey bases his claim to a right of arbitration on his employment with Merrill Lynch, a denial of Merrill Lynch's motion to compel arbitration would preclude a different ruling on Ramey's motion. However, if the court's decision on Merrill Lynch's motion does not stand on appeal, then the decision on Ramey's motion must be reversed also. *See id.*

WAIVER

The Eddingses contend that, by filing the initial third-party action against James Eddings, Merrill Lynch waived its right to compel arbitration. The right to have a dispute submitted to arbitration, like any other contractual right, may be waived either expressly or implicitly; however, such waiver must be intentional. *Star Hill Co. v. Johnson Controls, Inc.*, 673 S.W.2d 282, 283 (Tex.App.—Beaumont 1984, no writ). Whether there has been a waiver of the right to arbitration depends on the facts of each case. *Bramcon Gen. Contractors v. Wigley Const.*, 774 S.W.2d 826, 827 (Tex.App.—El Paso 1989, no writ). If a waiver is to be implied, the intention must be ascertained from the facts of the case. *Id.* Waiver of a contractual right to arbitration is not favored, and there is a presumption against it. *USX Corp. v. West*, 759 S.W.2d 764, 767 (Tex.App.—Houston [1st Dist.] 1988, no writ). Actions that raise the specter of waiver include engaging in some combination of filing an answer, filing a counterclaim, pursuing discovery, moving for a continuance, and failing to timely request arbitration. *Id.; Star Hill Co.*, 673 S.W.2d at 283. Waiver will only be found when the party seeking arbitration has invoked the judicial process to the detriment of the other party. *USX Corp.*, 759 S.W.2d at 767. Delay in making the arbitration demand must result in actual prejudice to the other party before it will result in a waiver. *Id.*

Here, Merrill Lynch was sued by the Bank of Troy for conversion of certain shares of stock owned by the trust that the bank alleged were to be held in a segregated account for the bank's benefit. Merrill Lynch responded with a cross-action against James Eddings for indemnity and to impose a constructive trust over the proceeds of the sale of the shares, claiming that any security interest that the bank might establish in the shares would follow the proceeds into James's hands. It did invoke the judicial process. However, Merrill Lynch's initial response to James's counterclaim was a motion to compel arbitration, and James has not demonstrated that he was prejudiced by the delay. Be-

**880**

cause waiver of a contractual right to arbitration is not favored, and because of the presumption against waiver, we hold that under these facts Merrill Lynch did not waive its right to arbitration when it sought only indemnity or the imposition of a constructive trust against James Eddings to protect itself from the claims of the Bank of Troy. *See USX Corp.*, 759 S.W.2d at 767.

Because Merrill Lynch did not waive the right to compel arbitration, issue preclusion will not defeat Ramey's motion to compel arbitration. *See Scurlock Oil Co.*, 724 S.W.2d at 6.

SCOPE OF THE AGREEMENT TO ARBITRATE

■■■■ The arbitration clause of the account agreement requires arbitration of "all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance or breach of this agreement or any other agreement...." Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Longoria*, 783 S.W.2d at 230. As we have stated, the Eddingses' pleadings assert claims that could have only arisen because the account agreement existed. A party may not avoid broad language in an arbitration clause by attempting to cast complaints in tort rather than contract. *McBro Planning & Development v. Triangle Elec. Const.*, 741 F.2d 342, 344 (11th Cir. 1984). Thus, we hold that all of Kirston's and Amanda's claims against Merrill Lynch and Ramey are subject to arbitration, as are all of James's claims against Ramey.

We sustain each point of error relating to the failure of the court to order arbitration, reverse the orders denying the motions to arbitrate, and remand each cause with instructions to enter an order compelling arbitration. *See* TEX.REV.CIV.STAT.ANN. art. 225.