Crossland v. Anchor Glass 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-251-CV

     JOHN HARVEY CROSSLAND AND JULIETH CROSSLAND,
                                                                                              Appellants
     v.

     ANCHOR GLASS CONTAINER CORPORATION,
                                                                                              Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 90-00-00714-CV
                                                                                                    

O P I N I O N
                                                                                                    

      John and Julieth Crossland (Crossland) attempt to appeal from an order granting Anchor Glass
Container's (Anchor) motion for summary judgment. We hold that the summary judgment is
interlocutory, and thus non-appealable, because it did not dispose of all claims against the
defendant and there is no severance of the unadjudicated claims. Therefore, we will dismiss for
want of jurisdiction.
      Anchor owned a glass container manufacturing plant in Corsicana. After deciding to move
the facility, Anchor contracted with Hag Steel Contractors to move its equipment from Corsicana. 
Hag hired Crossland, a trucker, to transport a 40,000 pound glass melting machine. Although
Crossland initially left the plant with the load during the day, he returned to the Anchor plant that
night after he discovered that the weight was not properly distributed. When Hag employees
attempted to reposition the machine using a "come-a-long," the "come-a-long" broke and a piece
struck Crossland in the head. 
      Crossland sued Anchor alleging that Anchor was negligent because it (1) created an
unreasonably dangerous condition by using the "come-a-long" to attempt to move the machine;
(2) failed to protect Crossland from the unreasonably dangerous condition; (3) failed to correct the
unreasonably dangerous condition; and (4) failed to warn Crossland of the unreasonably dangerous
condition. Anchor moved for a summary judgment on the theory that it was not responsible for
the events on the night that Crossland was injured because Hag was an independent contractor. 
After Anchor filed this motion, Crossland amended his petition to include a claim that Anchor was
negligent by failing to provide adequate lighting in the area where the accident occurred. Anchor
did not amend its summary judgment motion, relying instead on a reply to Crossland's response
to the motion. After a hearing, the court granted Anchor's motion, ordering that the "Motion for
Summary Judgment and Brief in Support is hereby GRANTED."


 
      To be final and appealable, a summary judgment must dispose of all parties and issues. Chase
Manhattan Bank, N.A. v. Lindsay, 787 S.W.2d 51, 53 (Tex. 1990). Furthermore, a summary
judgment must dispose of all issues within a single cause of action or it is interlocutory. Id. We
look only to the motion to determine the grounds for Anchor's request for a summary judgment. 
See McConnell v. Southside School Dist., 858 S.W.2d 337, 339 (Tex. 1993). If the summary
judgment is interlocutory, we do not have jurisdiction to consider the appeal, a fact we will notice
even though neither party points this out to us. See New York Underwriters Ins. Co. v. Sanchez,
799 S.W.2d 677, 679 (Tex. 1990). 
      Anchor never moved for a summary judgment on Crossland's cause of action based on the
negligent failure to provide proper lighting in the area where the accident occurred. Without a
severance, this unadjudicated claim remains pending before the court. See Lindsay, 787 S.W.2d
at 53. Additionally, the order does not contain any "Mother Hubbard" language which would
make it final and appealable. See Mafrige v. Ross, 866 S.W.2d 590, 592 (Tex. 1993). Thus, the
summary judgment is interlocutory. Accordingly, we dismiss the cause for want of jurisdiction.
 
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Dismissed for want of jurisdiction
Opinion delivered and filed June 8, 1994
Do not publish



ext-align: justify; line-height: 0.388889in">Id. § 171.026 (Vernon Supp. 1999).
STANDARD OF REVIEW
      When a court denies a motion to compel arbitration, what is the appropriate standard of
review?
      Our public policy strongly favors the submission of differences to arbitration. Merrill Lynch,
Pierce, Fenner & Smith v. Eddings, 838 S.W.2d 874, 878 (Tex. App.—Waco 1992, writ denied). 
Nevertheless, arbitration is a creature of statute which carries with it certain peculiarities. When
a court is called upon to determine whether a claim is subject to arbitration, the dispute can be
bifurcated into two distinct issues: 1) does a valid arbitration agreement exist; and 2) if so, do the
claims asserted fall within the scope of the agreement? Id. (citing prior statute); Nationwide of
Fort Worth, Inc. v. Wigington, 945 S.W.2d 883, 884 (Tex. App.—Waco 1997, writ dism’d,
w.o.j.); Tex. Civ. Prac. & Rem. Code Ann. §§ 171.021(b), 171.026.
      Looking at the first issue, assuming that the party seeking to compel arbitration has pointed
to an agreement to arbitrate, the initial question is whether the agreement is enforceable. Tex.
Civ. Prac. & Rem. Code Ann. § 171.021. If the opposing party "disputes" the agreement, i.e.
raises a ground that "exists at law or in equity for the revocation of a contract," the court must
"summarily" decide that issue on the basis of affidavits, pleadings, discovery, and stipulations. 
Id. §§ 171.001, 171.021; Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992). 
However, if the material facts necessary to determine the issue are controverted, either by an
opposing affidavit or otherwise admissible evidence, then the trial court must conduct an
evidentiary hearing to determine the disputed material facts. Carlin v. 3V Inc., 928 S.W.2d 291,
293 (Tex. App.—Houston [14th Dist.] 1996, no writ). 
      In addressing the second issue, the question may be asked in one of two ways: Does the
agreement cover the claims asserted? Or, do the claims fall within the scope of the agreement? 
The first might be asked if the opposing party questions the interpretation of the agreement. The
second, if the question concerns the interpretation of pleadings to determine if the claims asserted
are covered by the agreement. 
      Disputes regarding interpretation of arbitration agreements are analyzed under standard
contract construction principles. BDO Seidman v. Miller, 949 S.W.2d 858, 860 (Tex.
App.—Austin 1997, writ dism'd, w.o.j.). The agreement must be construed in its context and the
intent of the parties should be ascertained by according the contractual language its plain
grammatical meaning. See Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985); Kline v.
O’Quinn, 874 S.W.2d 776, 782 (Tex. App.—Houston [14th Dist.] 1994, writ denied). 
        Whether an unambiguous agreement imposes a duty to arbitrate a particular dispute is a
matter of contract interpretation and a question of law for the court. American Employers' Ins.
Co. v. Aiken, 942 S.W.2d 156, 159 (Tex. App.—Fort Worth 1997, no writ)


 (citing Kline, 874
S.W.2d at 782). Whether we are examining the scope of the agreement or the nature of the
claims, the question is one of interpretation and the review is de novo. Any doubts regarding the
scope of an arbitration agreement should be resolved in favor of arbitration. Id. (citing Cantella
& Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding)). When evaluating
the nature of the claims, the focus should be on the factual allegations involved in the dispute and
not the legal causes of action raised. Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899-900
(Tex. 1995) (orig. proceeding).
THE UNDERLYING DISPUTE
      The existence of a valid arbitration agreement, the first issue, is undisputed. Thus, we are
asked to review only the second issue, i.e., the court’s determination that Leander’s claims fall
outside the scope of the agreement. Brazos questions both the scope of the agreement and the
nature of Leander's claims. Leander urges that the only question before us is the court's legal
interpretation of the arbitration clause.
      The Purchase Order contains two provisions which contemplate legal disputes. Paragraph 17,
the one at issue here, provides:
FOR ANY TYPE OF LEGAL DISPUTE THAT BRAZOS MASONRY, INC. MIGHT
BE ENGAGED IN DUE TO THE QUALITY OR PERFORMANCE OF LEANDER CUT
STONE, IT IS UNDERSTOOD THESE DISPUTES SHALL BE SETTLED BY
ARBITRATION CONDUCTED IN AUSTIN, TEXAS IN ACCORDANCE WITH THE
COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION THEN
IN EFFECT. THIS ONLY STANDS TRUE IF THE DISAGREEMENT IS BETWEEN
BRAZOS MASONRY, INC. AND LEANDER CUT STONE. 

Paragraph 19 provides:
 
IF ANY LITIGATION ARISES INVOLVING THE GENERAL CONTRACTOR
(AUSTIN RIO CONSTRUCTION), OR THE OWNER, DUE TO THE QUALITY OR
PERFORMANCE OF LEANDER CUT STONE CO., THESE DISPUTES WILL BE
SETTLED IN A COURT OF LAW AND THE AGREEMENT IN ITEM NUMBER 18
(ABOVE) SHALL BECOME NULL AND VOID. 

          The record shows that Leander's complaints of damages are based in part on performance
under the contract. Leander asserts expenses incurred from the preparation of shop drawings and
the fabrication of stone for the F.W. Olin Building, resulting in a loss of $34,000. This does not
include any damages claimed for lost profits. 
          The plain grammatical meaning of the arbitration clause requires arbitration of any type
of legal dispute due to the quality or performance of Leander. See Lyons, 701 S.W.2d at 643. 
The underlying dispute involves damages allegedly sustained by Leander’s partial performance
under the contract. Prudential Securities, 909 S.W.2d at 899-900. In light of the policy favoring
arbitration, we resolve any doubt in favor of arbitration. Eddings, 838 S.W.2d at 880. We find
that Leander’s claims fall within the scope of the arbitration clause.
CONCLUSION
          Having concluded that the underlying dispute falls within the scope of the arbitration
clause, we hold that the court erred in denying the motion to stay litigation and compel arbitration. 
Leander’s point of error is sustained, and the trial court’s order denying arbitration is reversed and
the cause remanded with instructions that Leander's motion to compel arbitration be granted as
provided in Section 171.021 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.
Code Ann. § 171.021.
 
 
                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
          (Justice Gray concurring)
Reversed and remanded with instructions
Opinion delivered and filed March 31, 1999
Publish