**Scott PHILLIPS, Marilyn Matthews, and Associated Bond Brokers, Appellants,**

v.

**ACS MUNICIPAL BROKERS, INC., Appellee.**

No. 05–94–00281–CV.

Court of Appeals of Texas, Dallas.

Oct. 14, 1994.

---

Jack D. Ballard and Maria Dickson, Houston, Alan W. Harris, Dallas, for appellants.

Ben L. Krage and Martin J. Sweeney, Dallas, for appellee.

Before KINKEADE, MALONEY and BARBER, JJ.

## OPINION

MALONEY, Justice.

ACS Municipal Brokers, Inc. sued Scott Phillips, Marilyn Matthews, and Associated Bond Brokers, Inc. (collectively the Brokers), alleging breach of fiduciary duty and conversion of ACS's "business enterprise" and business opportunities. The trial court denied the Brokers' motion to stay litigation and compel arbitration. In three points of error, the Brokers contend that the trial court erred in denying their motion.[1] We affirm the trial court's order.

### FACTUAL BACKGROUND

Phillips and Matthews were managers, directors, and officers of ACS, a securities firm. They resigned from ACS and began operating Associated Bond Brokers, a competing securities firm.

ACS and Associated executed National Association of Securities Dealers, Inc. (NASD) Certifications in which they agreed to adhere to the rules and bylaws of the NASD. NASD adopted a code of arbitration procedure, which requires "arbitration of any dis-

1. Specifically the Brokers argue that ACS was subject to the arbitration code of a securities industry self-regulatory organization, and ACS's claims are subject to an enforceable agreement to arbitrate. The Brokers also argue they did not waive their right to compel arbitration.

pute, claim or controversy arising out of or in connection with the business of any member of the Association."

Phillips and Matthews executed a "Uniform Application for Securities Industry Registration or Transfer Form U–4" in which they agreed to arbitrate any dispute with their firm, customers, or others as required by the rules of the NASD.[2] Although ACS verified the information supplied by Phillips in his U–4 form, it was not a party to the agreement. The record contains no arbitration agreement between the Brokers and ACS.

## PROCEDURAL BACKGROUND

The Brokers answered ACS's lawsuit and served ACS with interrogatories and a request for document production. Some six months later, the Brokers made a demand for arbitration under the NASD code. Subsequently, the Brokers moved to stay litigation and compel arbitration. After a hearing, the trial court denied the Brokers' motion.

## JURISDICTION

The Brokers argue that they are entitled to arbitration under both the Texas General Arbitration Act, TEX.REV.CIV.STAT.ANN. arts. 224 through 249–43 (Vernon 1973 & Supp. 1994) (the Texas Act), and the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16 (West 1970) (the Federal Act). ACS disagrees.

A court of appeals may only hear an appeal of a final order or judgment. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992) (orig. proceeding); *see* TEX.CIV. PRAC. & REM. CODE ANN. §§ 51.012, .014 (Vernon 1986 & Supp.1994). We review interlocutory orders only with specific statutory authority. *Anglin*, 842 S.W.2d at 272. Article 225 of the Texas Act authorizes the trial court's denial of applications to compel arbitration. TEX.REV.CIV.STAT.ANN. art. 225, § A (Vernon 1973). Article 238–2 of the Texas Act provides for interlocutory appeal of an

order denying application to compel arbitration under article 225. TEX.REV.CIV.STAT. ANN. art. 238–2, § A(1) (Vernon 1973). Texas courts have no jurisdiction to review an interlocutory order denying arbitration under the Federal Act. *D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 228 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.); *see Anglin*, 842 S.W.2d at 272 (appellants who claim a right to arbitration under both the Federal Act and the Texas Act must pursue parallel proceedings—an interlocutory appeal under the Texas Act and a writ of mandamus under the Federal Act);[3] *Prudential–Bache Sec., Inc. v. Garza*, 848 S.W.2d 803, 806 (Tex.App.—Corpus Christi 1993, orig. proceeding).

## STANDARD OF REVIEW

We review a trial court's order denying a motion to stay litigation and compel arbitration under the "no evidence" standard. *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.*, 849 S.W.2d 380, 384 (Tex.App.—Houston [14th Dist.] 1993, writ denied). In reviewing a "no evidence" point of error, we consider only the evidence and inferences that tend to support the trial court's findings and disregard all evidence and inferences to the contrary. *Jacobs v. Danny Darby Real Estate, Inc.*, 750 S.W.2d 174, 175 (Tex.1988). When the record contains no findings of fact and conclusions of law, we affirm the trial court's judgment on any legal theory the evidence supports. *Lute Riley Motors, Inc. v. T.C. Crist, Inc.*, 767 S.W.2d 439, 440 (Tex.App.—Dallas 1988, writ denied); *see Hearthshire Braeswood*, 849 S.W.2d at 384.

## ARBITRATION AGREEMENT

In their first point of error, the Brokers assert that the trial court erred in denying their motion to stay litigation and compel arbitration. They argue the parties entered an enforceable agreement to arbitrate under

---

**2.** A copy of Phillips's U–4 form is part of the record. The Brokers assert that Matthews executed a similar form. The record does not contain Matthews's form. Because of our disposition of this appeal, the form's absence from the record is immaterial.

**3.** The Brokers filed their motion for writ of mandamus under the Federal Act. This Court's disposition of their writ has no bearing on this interlocutory appeal under the Texas Act.

the Texas Act when they registered with NASD. The Brokers contend that the arbitration rules of a self-regulatory organization operate as a contract among its registered members and individuals. ACS responds that this is an employment dispute, and the NASD rules in place at the time did not apply to employment disputes.[4] At oral argument, ACS maintained that any arbitration agreements were only between the parties and NASD, not between the parties themselves.

### 1. Applicable Law

Texas law strongly favors arbitration. *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.,* 809 S.W.2d 589, 591 (Tex.App.—Dallas 1991, writ dism'd w.o.j.); *see Brazoria County v. Knutson,* 142 Tex. 172, 178, 176 S.W.2d 740, 743 (1943); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874, 878 (Tex.App.—Waco 1992, writ denied). The Texas Act provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising *between the parties* is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

TEX.REV.CIV.STAT.ANN. art. 224 (Vernon Supp.1994) (emphasis added).[5] Texas courts apply the Texas Act "only when a valid written agreement to arbitrate exists *between the parties to the agreement or the contract.*" *Di Giammatteo v. Olney,* 794 S.W.2d 103, 104 (Tex.App.—Dallas 1990, no writ) (emphasis added). Unless a party clearly agreed to arbitrate and to be bound by the arbitrators' decision, courts do not compel arbitration.[6]

**4.** ACS relies on *Farrand v. Lutheran Brotherhood,* 993 F.2d 1253, 1255 (7th Cir.1993). Both parties argued the Federal Act and federal caselaw. Because this Court has no jurisdiction over an interlocutory appeal under the Federal Act, we apply only Texas caselaw decided under the Texas Act.

**5.** The Texas Act limits arbitration where the Federal Act expands arbitration. The Federal Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction

*See Massey v. Galvan,* 822 S.W.2d 309, 316 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (addressing common-law arbitration); *Manes v. Dallas Baptist College,* 638 S.W.2d 143, 145 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (addressing common-law arbitration).

■ Before enforcing contractual arbitration, the trial court must determine: (1) that the parties agreed to arbitrate and (2) the scope of that agreement. *Eddings,* 838 S.W.2d at 878. Texas statutes require the trial court deny arbitration unless it determines a valid agreement to arbitrate exists. TEX.REV.CIV.STAT.ANN. art. 225, § A. If the trial court finds an enforceable agreement to arbitrate and the claims asserted fall within that agreement, it must compel arbitration. *Eddings,* 838 S.W.2d at 878; *see* TEX.REV. CIV.STAT.ANN. art. 225.

### 2. Application of Law to the Facts

■ Neither party requested nor did the trial court file findings of fact or conclusions of law. We have reviewed the record to determine if the evidence supports the trial court's order.

NASD is a self-regulating organization with registered members and individuals. Associated and ACS each agreed in their individual NASD certification applications to adhere to NASD's rules. NASD's rules include a code of arbitration. Phillips and Matthews agreed in their NASD registration forms to arbitrate disputes with their firm, customers, or others as required by NASD's rules.

The Brokers cite us to no cases under the Texas Act which hold that mutual registration qualifies as an agreement to arbitrate. The Brokers rely on cases that interpret only

> involving commerce to settle by arbitration a controversy thereafter *arising out of such contract or transaction,* ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
> 9 U.S.C.A. § 2 (West 1970) (emphasis added).

**6.** *See* TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

the Federal Act. The Brokers misplace their reliance.

Although the Federal Act compels arbitration of disputes arising from "a transaction involving commerce," the Texas Act requires arbitration only between the parties to an agreement to arbitrate. The Texas Act focuses on the "parties" to an agreement, not the "transaction." The Texas Act contemplates that parties enter a specific, mutual agreement to arbitrate before a court will force a party to relinquish its judicial rights and remedies.

No valid written agreement existed between ACS and Associated to submit their disputes to arbitration. Nor was ACS a party to Phillips's and Matthews's agreements to arbitrate. Phillips's and Matthews's agreements cannot bind ACS.

The record contains no evidence of an enforceable agreement to arbitrate under the Texas Act. The separately executed registration agreements between the parties and NASD are not an agreement between the parties as contemplated by the Texas Act.[7]

We overrule the Brokers' first point of error. Because of our disposition of the Brokers' first point of error, we need not consider their remaining points of error.

We affirm the trial court's order denying the Brokers' motion to stay litigation and compel arbitration.

---

**7.** *See Eddings,* 838 S.W.2d at 878. In *Eddings,* the Waco court addressed enforcement of a specific arbitration agreement between a securities dealer registered with the New York Stock Exchange and its customer. The court noted that the New York Stock Exchange's arbitration rules "alone offer[ed] no support for compelling arbitration." *Id.*

We are aware that other courts in construing the Federal Act have indicated that an agreement to abide by NASD's rules, or those of other self-regulatory organizations, is sufficient to compel arbitration. *See First Investors Corp. v. American Capital Fin. Servs., Inc.,* 823 F.2d 307, 309 (9th Cir.1987); *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.,* 819 F.2d 400, 406 (3d Cir.1987); *Merrill Lynch, Pierce, Fenner & Smith v. Longoria,* 783 S.W.2d 229, 230–31 (Tex.App.—Corpus Christi 1989, orig. proceeding).