**SMITH BARNEY SHEARSON, INC.,** Successor to Shearson Lehman Brothers, Inc., Debbie Haines, Arthur Kieval, Andrew Shea, and David Standridge, Appellants

v.

**Harold FINSTAD, Appellee.**

No. 01–94–00575–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 13, 1994.

Order Overruling Motion for Rehearing

Nov. 23, 1994.

Jack D. Ballard, A. Ross Rommel, and Maria D. Dickson, Houston, for appellants.

Barry L. Racusin and Jon M. Wagner, Houston, for appellee.

Before HUTSON–DUNN, ANDELL and PRICE [1], JJ.

**1.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

## OPINION

HUTSON–DUNN, Justice.

Appellants (collectively, "Shearson") [2] bring this accelerated appeal from an interlocutory order denying their motion to compel arbitration. We affirm in part, and reverse and remand in part.

Before reaching the merits of this case, we must dispose of two preliminary issues: 1) our jurisdiction to consider this interlocutory appeal; and 2) whether the trial court was required to make findings of fact and conclusions of law in this case.

## JURISDICTION

The first issue this Court must resolve is whether we have jurisdiction to consider this interlocutory appeal. Interlocutory orders may be appealed only if permitted by statute. *Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985). The Texas Arbitration Act specifically permits an interlocutory appeal from an order denying a motion to compel arbitration under that act. TEX.REV.CIV.STAT.ANN. art. 238–2(A)(1) (Vernon 1973). However, claims brought under the Federal Arbitration Act may not be appealed under article 238–2; a writ of mandamus is required to allow a Texas court to review an order refusing to compel arbitration under the Federal act. *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex. 1992).

Appellee (Finstad) argues that we may not hear this case because Shearson's claims are under the Federal Arbitration Act. However, Shearson's motion to compel was filed pursuant to both the federal and the state arbitration acts. There is no indication which act the trial court applied in reaching its decision.

In *Anglin,* the court recognized that a party alleging entitlement to arbitration under both acts is burdened with the need to pursue parallel proceedings—an interlocutory appeal under the state act and a manda-

**2.** At the time the incidents made the basis of this lawsuit occurred, all of the parties involved were employed by Shearson Lehman Brothers, Inc., which is now known as Smith Barney Shearson, Inc.

mus under the federal act. *Id.* at 272. By choosing to pursue only an interlocutory appeal, we presume that appellants have elected to seek arbitration only under the Texas Arbitration Act. Neither party has seriously contended that the Texas Arbitration Act is inapplicable to this case. We have jurisdiction to consider interlocutory appeals from orders denying arbitration under the state act.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Appellants ask that we abate this proceeding and remand it to the trial court for entry of findings of fact and conclusions of law. Shearson argues that an evidentiary hearing was held before the trial court on the motion to compel arbitration, that they timely requested findings of fact and conclusions of law, and that the trial court denied their request.

■ The trial court is not required to enter findings of fact and conclusions of law in an accelerated appeal. *Wetzel v. Sullivan, King & Sabom, P.C.,* 745 S.W.2d 78, 79 (Tex. App.—Houston [1st Dist.] 1988, no writ); Tex.R.App.P. 42(a)(1). Therefore, the trial court did not err by refusing to enter findings of fact and conclusions of law. Appellant's request that we abate and remand this case is denied.

### BACKGROUND

Finstad was employed as a stockbroker by Shearson from June 1, 1987, until April 14, 1992, when he was terminated. Shearson claims that Finstad was fired because the branch manager discovered that Finstad had recommended numerous investments that were unsuitable for his clients, and had failed to cooperate with Shearson's auditors during a branch examination. Finstad contends that he was fired because Shearson discovered that he was seeking other employment, and Shearson intended to prevent his pension rights from vesting.

As a result of this dispute, Finstad filed the present action alleging slander, civil conspiracy, and intentional infliction of emotional distress. Shearson filed a general denial, and a motion to compel arbitration and stay the pending litigation. The trial court denied Shearson's motion, and Shearson filed this appeal.

### APPLICABLE PRINCIPLES OF LAW

■ We begin by noting that arbitration proceedings are favored by Texas law. *Brazoria County v. Knutson,* 176 S.W.2d 740, 743 (Tex.1943). Doubts as to the scope of the arbitration agreement should be resolved in favor of arbitration. *Merrill Lynch, Pierce Fenner & Smith v. Eddings,* 838 S.W.2d 874, 879 (Tex.App.—Waco 1992, writ denied). A court deciding a motion to compel arbitration must determine whether the parties agreed to arbitrate, and, if so, the scope of the arbitration agreement. *Merrill Lynch, Pierce, Fenner & Smith v. Longoria,* 783 S.W.2d 229, 230 (Tex.App.—Corpus Christi 1989, no writ). Therefore, two questions must be decided: (1) Was there an agreement to arbitrate?; (2) Does the agreement encompass the claims asserted? *Eddings,* 838 S.W.2d at 878. If the court answers these two questions affirmatively, it must compel arbitration. *Id.*

Both Shearson and Finstad agree that a valid arbitration agreement exists. The only issue remaining is whether Finstad's claims are covered by the arbitration agreement.

### APPELLEE'S CLAIMS

In his original petition, Finstad has a nine-page section entitled "Factual History." In this section, Finstad details the alleged actions of appellants giving rise to this lawsuit. He then alleges that these actions give rise to causes of action for slander, civil conspiracy, and intentional infliction of emotional distress. The actions complained of are as follows:

(1) Shearson pressured Finstad to recommend to his clients certain securities sponsored by Shearson;

(2) Appellant Haines, an administrative assistant at Shearson, told a recently transferred Shearson stockbroker that Finstad was a "disgusting loser," who was "running a chain of black hookers out of his office." These statements were allegedly repeated

to brokers at other Shearson offices, outside stockbrokers, and to the general public. Haines also allegedly repeated the "black hooker" story at a party attended by Shearson stockbrokers, and added that Finstad "was unethical", and "probably got weekly shots for every disease known to man;"

(3) Shearson fired Finstad, gave him only one hour to move out of his office, and refused to allow him to make copies of his personal and business records, and lists of clients;

(4) After Finstad's termination, Shearson filed two Form U–5s with the NASD which allegedly contained incorrect descriptions of the terms upon which several client complaints against Finstad had been resolved;

(5) Shearson told its stockbrokers that Finstad had been fired for "cause," and instructed them to tell Finstad's clients such;

(6) When one of Finstad's clients asked whether he had done something illegal, a Shearson representative replied, "You might say that." Shearson also told the client that Finstad had been fired for cause and for assigning stock to the wrong client accounts; and

(7) Shearson filed a false 1099–OID form with the IRS which indicated that Finstad had earned in excess of $36,000 of original issue discount income in 1990. By filing this form Shearson cause Finstad to be audited by the IRS.

## THE ARBITRATION AGREEMENTS

We must now decide whether the claims listed above are encompassed by the arbitration agreement. When Finstad began working at Shearson, he signed a Form U–4 arbitration agreement that provides:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitution, or by-laws of the organizations indicated in item 10 as may be amended from time to time.

Item 10, referred to in the clause above, indicates that Finstad is registered with the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE). Therefore, the rules of those two organizations govern which disputes must be resolved by arbitration. The NASD Code of Arbitration Procedure provides:

> Any dispute, claim or controversy eligible for submission under Part 1 of this Code between or among members and/or associated persons and/or certain others, *arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated* under this Code....

*NASD Code* 8(a) (emphasis added). The NASD Code also provides for the arbitration of "any dispute, claim or controversy *arising out of or in connection with the business* of any member of the association" between certain categories of companies of individuals. *NASD Code* § 1 (emphasis added).

The NYSE Constitution provides for arbitration of disputes "*arising out of the business* of [a] member." *NYSE Constitution,* art. XI, § 1 (emphasis added). The Rules of the NYSE also provide:

> Any controversy between a registered representative and any member or member organization *arising out of the employment or termination of employment of a registered representative* by and with such member or member organization shall be settled by arbitration....

*NYSE Rule* 347 (emphasis added).

Both parties admit that they are bound by these arbitration clauses. Therefore, the only issue before this Court is whether Finstad's claims arise out of the business of Shearson, or the employment or termination of Finstad.

## ANALYSIS

■ The above referenced arbitration clauses are quite common in the securities industry, and have often been interpreted by the federal courts, which have held that claims involving "significant aspects of the employment relationship" are arbitrable. *Fleck v. E.F. Hutton Group, Inc.,* 891 F.2d

1047, 1053 (2nd Cir.1989); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1167 (8th Cir.1984). Claims that depend upon an evaluation of one's performance as a broker or an employer involve significant aspects of the employment relationship. *Fleck*, 891 F.2d at 1053; *Aspero v. Shearson Am. Express, Inc.*, 768 F.2d 106, 109 (6th Cir.), *cert. denied*, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985). Texas courts have followed the federal courts in applying the "significant aspects of employment" test. *Prudential–Bache Securities, Inc. v. Garza*, 848 S.W.2d 803, 807 (Tex. App.—Corpus Christi 1993, no writ).

██ Allegation (1), that Shearson pressured Finstad to recommend securities sponsored by them, arises out of the conduct of Shearson's business, and is arbitrable.

██ Allegation (3), that Shearson fired Finstad, gave him one hour to move, and denied him access to his files, arises from the termination of Finstad, and is arbitrable.

██ Allegation (4), that Shearson had filed false information with the NASD about how several customer complaints against Finstad had been resolved is also arbitrable. *See Garza*, 848 S.W.2d at 806–807 (informing regulatory agencies that customer complaints had been lodged against employee held arbitrable).

██ Allegations (5) & (6), that Shearson had informed Finstad's clients that he had been terminated for cause, and that "[y]ou might say that" he had done something illegal, arise from Finstad's termination, and are arbitrable. *See Fleck*, 891 F.2d at 1053 (statements made that employee was "basically a criminal" and had been fired for cause held arbitrable).

██ Allegation (7), that Shearson provided false information to the IRS about Finstad's earnings, would involve an evaluation of Shearson as an employer, arises from Shearson's business and Finstad's employment, and is arbitrable.

██ A more difficult question is whether the statements made in allegation (2) are arbitrable. The alleged defamatory publication that Finstad was a "disgusting loser" who was "running a chain of black hookers out of his office," as well as the statement that he "probably got weekly shots for every disease known to man," is not sufficiently related to his employment or Shearson's business to require arbitration.

Shearson argues that these statements are arbitrable because of the allegation that Finstad was running a chain of hookers *out of his office at Shearson.* However, just because the alleged misconduct occurred at Shearson's offices does not mean that it is related to Shearson's business or Finstad's employment. In *Morgan*, the court refused to compel arbitration of a defamatory statement that the employee had stolen things from his co-workers' desks at the office. 729 F.2d at 1168.

Texas courts have also refused to compel arbitration of alleged statements made about brokers that have little to do with their performance as brokers. In *Garza*, the court refused to compel arbitration of a claim that the employer had failed to correct a third person's impression that the fired employee had AIDS. The court held that this allegation did not involve significant aspects of the employment relationship. *Garza*, 848 S.W.2d at 807.

Shearson also argues that the statements are arbitrable because Finstad contends they were made in an effort to damage his *professional* reputation. However, we do not believe that the statements involve a significant aspect of the employment relationship just because they damage the employee's professional reputation. It is the nature of the alleged defamatory statements, and not the nature of the damage they inflict, that determines whether the claims are arbitrable.

Therefore, we hold that the statements that Finstad was a "disgusting loser" who was "running a chain of black hookers out of his office," and "probably got weekly shots for every disease known to man," are not arbitrable because they do not involve significant aspects of his employment relationship with Shearson. *See Fleck*, 891 F.2d at 1053 (statement that employee was a disbarred lawyer not subject to arbitration); *see also, McMahon v. RMS Electronics, Inc.*, 618

F.Supp. 189 (S.D.N.Y.1985) (statement that employee was the "company drunk" not subject to arbitration).

 Appellant Haines also allegedly made a statement at a party attended by other stockbrokers that Finstad "was unethical." In contrast to the statements referred to above, the claim that Finstad was "unethical" could require an examination of his performance as a stockbroker, if it was made as a reference to his business practices. Therefore, the statement could arise out of his employment, and be subject to arbitration. *See Zolezzi v. Dean Witter Reynolds, Inc.,* 789 F.2d 1447, 1449–50 (9th Cir.1986) (statement to employee's client that employee was immoral, unethical, and would eventually lose his broker's license was subject to arbitration). To the extent the statement that Finstad was "unethical" relates to his sexual and moral values, it is not subject to arbitration.

### CONCLUSION

We hold that allegations (1), (3), (4), (5), (6) & (7) all involve significant aspects of the employment relationship between Shearson and Finstad, and are subject to arbitration. We also find that the statement in allegation (2) that Finstad was "unethical" is also subject to arbitration, but only as it relates to his business practices. Therefore, we reverse in part the order of the trial court, and remand for proceedings consistent with this opinion. We affirm· the order of the trial court as to the remaining statements in allegation (2).

### OPINION ON MOTION FOR REHEARING

 In their motion for rehearing, appellants argue that only those appellants who are alleged to have actually uttered the statements that we have held to be not subject to arbitration should be required to participate in the litigation arising from those statements. In his petition, Finstad claims that appellant Haines was responsible for making the statements that he was a "disgusting loser," and was "running a chain of black hookers out of his office." Appellant Shea allegedly repeated these statements. Finstad also alleges that appellant Haines is responsible for calling him "unethical" and claiming that he "probably got weekly shots for every disease known to man."

Appellants argue that only appellants Haines and Shea should be required to litigate Finstad's claims that are based on these statements, and that the remaining appellants should be allowed to arbitrate the claims. We disagree. In our opinion, we held that the above-referenced claims do not fall within the scope of the arbitration agreement because they do not arise out of or relate to Finstad's employment. The fact that some of the appellants are not alleged to have actually uttered the statements does not bring the statements within the scope of the arbitration agreement. The statements are simply not arbitrable *as to anyone.*

If the remaining appellants contend that they are not responsible for the statements allegedly made by appellants Haines and Shea, the proper remedy is to seek a summary judgment in the litigation. Arbitration is not appropriate under the terms of the arbitration agreements.

We **OVERRULE** appellants' motion for rehearing.