Leander Cuut Stone Co., Inc. v. Brazos Masonry, Inc.
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-250-CV

     LEANDER CUT STONE CO., INC.,
                                                                              Appellant
     v.

     BRAZOS MASONRY, INC.,
                                                                              Appellee
 

From the County Court at Law No. 2
McLennan County, Texas
Trial Court # 970308
                                                                                                                
 
O P I N I O N
                                                                                                                
  
     Brazos Masonry, Inc. (“Brazos”) accepted a subcontract from Austin Rio Construction
Company (“Austin Rio”) to install stone on the F.W. Olin Building on Southwestern University’s
campus. Brazos then entered into a purchase-order agreement with Leander Cut Stone Company
(“Leander”) under which Leander would supply the stone for the project. Brazos canceled the
contract with Austin Rio,


 then canceled its agreement with Leander. When Brazos contested
Leander's claim for damages as a result of Brazos’ breach, Leander filed a demand for arbitration. 
Brazos filed suit seeking a declaratory judgment that the dispute is not subject to binding
arbitration. Leander filed a motion to stay the litigation and to compel arbitration. The court
denied the motion, and Leander appeals. Tex. Civ. Prac. & Rem. Code Ann. § 171.098
(Vernon Supp. 1999) (permitting appeal of order denying an application to compel arbitration). 
The arbitration clause in dispute is governed by the Texas General Arbitration Act. Tex. Civ.
Prac. & Rem. Code Ann. ch. 171 (Vernon 1997 & Supp. 1999).
THE ARBITRATION STATUTE
            Chapter 171 of the Civil Practice and Remedies Code sets the statutory framework for
arbitration of disputes. Section 171.001 relates to the agreement to arbitrate:
(a) A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate
a controversy that:
 
(1) exists at the time of the agreement; or
(2) arises between the parties after the date of the agreement.
 
(b) A party may revoke the agreement only on a ground that exists at law or in equity for the
revocation of a contract.

Id. § 171.001 (Vernon Supp. 1999). Section 171.021 relates to the court's duty to order
arbitration and disputes about the agreement to arbitrate:
      (a) A court shall order the parties to arbitrate on application of a party showing:

            (1) an agreement to arbitrate; and
            (2) the opposing party's refusal to arbitrate.
 
(b) If a party opposing an application made under Subsection (a) denies the existence of the
agreement, the court shall summarily determine that issue. The court shall order the
arbitration if it finds for the party that made the application. If the court does not find for that
party, the court shall deny the application.
 
(c) An order compelling arbitration must include a stay of any proceeding subject to Section
171.025.
 
Id. § 171.021 (Vernon Supp. 1999). Section 171.026 speaks to the nature of the underlying
dispute:
      A court may not refuse to order arbitration because:

            (1) the claim lacks merit or bona fides; or
            (2) the fault or ground for the claim is not shown. 

Id. § 171.026 (Vernon Supp. 1999).
STANDARD OF REVIEW
      When a court denies a motion to compel arbitration, what is the appropriate standard of
review?
      Our public policy strongly favors the submission of differences to arbitration. Merrill Lynch,
Pierce, Fenner & Smith v. Eddings, 838 S.W.2d 874, 878 (Tex. App.—Waco 1992, writ denied). 
Nevertheless, arbitration is a creature of statute which carries with it certain peculiarities. When
a court is called upon to determine whether a claim is subject to arbitration, the dispute can be
bifurcated into two distinct issues: 1) does a valid arbitration agreement exist; and 2) if so, do the
claims asserted fall within the scope of the agreement? Id. (citing prior statute); Nationwide of
Fort Worth, Inc. v. Wigington, 945 S.W.2d 883, 884 (Tex. App.—Waco 1997, writ dism’d,
w.o.j.); Tex. Civ. Prac. & Rem. Code Ann. §§ 171.021(b), 171.026.
      Looking at the first issue, assuming that the party seeking to compel arbitration has pointed
to an agreement to arbitrate, the initial question is whether the agreement is enforceable. Tex.
Civ. Prac. & Rem. Code Ann. § 171.021. If the opposing party "disputes" the agreement, i.e.
raises a ground that "exists at law or in equity for the revocation of a contract," the court must
"summarily" decide that issue on the basis of affidavits, pleadings, discovery, and stipulations. 
Id. §§ 171.001, 171.021; Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992). 
However, if the material facts necessary to determine the issue are controverted, either by an
opposing affidavit or otherwise admissible evidence, then the trial court must conduct an
evidentiary hearing to determine the disputed material facts. Carlin v. 3V Inc., 928 S.W.2d 291,
293 (Tex. App.—Houston [14th Dist.] 1996, no writ). 
      In addressing the second issue, the question may be asked in one of two ways: Does the
agreement cover the claims asserted? Or, do the claims fall within the scope of the agreement? 
The first might be asked if the opposing party questions the interpretation of the agreement. The
second, if the question concerns the interpretation of pleadings to determine if the claims asserted
are covered by the agreement. 
      Disputes regarding interpretation of arbitration agreements are analyzed under standard
contract construction principles. BDO Seidman v. Miller, 949 S.W.2d 858, 860 (Tex.
App.—Austin 1997, writ dism'd, w.o.j.). The agreement must be construed in its context and the
intent of the parties should be ascertained by according the contractual language its plain
grammatical meaning. See Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985); Kline v.
O’Quinn, 874 S.W.2d 776, 782 (Tex. App.—Houston [14th Dist.] 1994, writ denied). 
        Whether an unambiguous agreement imposes a duty to arbitrate a particular dispute is a
matter of contract interpretation and a question of law for the court. American Employers' Ins.
Co. v. Aiken, 942 S.W.2d 156, 159 (Tex. App.—Fort Worth 1997, no writ)


 (citing Kline, 874
S.W.2d at 782). Whether we are examining the scope of the agreement or the nature of the
claims, the question is one of interpretation and the review is de novo. Any doubts regarding the
scope of an arbitration agreement should be resolved in favor of arbitration. Id. (citing Cantella
& Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding)). When evaluating
the nature of the claims, the focus should be on the factual allegations involved in the dispute and
not the legal causes of action raised. Prudential Sec. Inc. v. Marshall, 909 S.W.2d 896, 899-900
(Tex. 1995) (orig. proceeding).
THE UNDERLYING DISPUTE
      The existence of a valid arbitration agreement, the first issue, is undisputed. Thus, we are
asked to review only the second issue, i.e., the court’s determination that Leander’s claims fall
outside the scope of the agreement. Brazos questions both the scope of the agreement and the
nature of Leander's claims. Leander urges that the only question before us is the court's legal
interpretation of the arbitration clause.
      The Purchase Order contains two provisions which contemplate legal disputes. Paragraph 17,
the one at issue here, provides:
FOR ANY TYPE OF LEGAL DISPUTE THAT BRAZOS MASONRY, INC. MIGHT
BE ENGAGED IN DUE TO THE QUALITY OR PERFORMANCE OF LEANDER CUT
STONE, IT IS UNDERSTOOD THESE DISPUTES SHALL BE SETTLED BY
ARBITRATION CONDUCTED IN AUSTIN, TEXAS IN ACCORDANCE WITH THE
COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION THEN
IN EFFECT. THIS ONLY STANDS TRUE IF THE DISAGREEMENT IS BETWEEN
BRAZOS MASONRY, INC. AND LEANDER CUT STONE. 

Paragraph 19 provides:
 
IF ANY LITIGATION ARISES INVOLVING THE GENERAL CONTRACTOR
(AUSTIN RIO CONSTRUCTION), OR THE OWNER, DUE TO THE QUALITY OR
PERFORMANCE OF LEANDER CUT STONE CO., THESE DISPUTES WILL BE
SETTLED IN A COURT OF LAW AND THE AGREEMENT IN ITEM NUMBER 18
(ABOVE) SHALL BECOME NULL AND VOID. 

          The record shows that Leander's complaints of damages are based in part on performance
under the contract. Leander asserts expenses incurred from the preparation of shop drawings and
the fabrication of stone for the F.W. Olin Building, resulting in a loss of $34,000. This does not
include any damages claimed for lost profits. 
          The plain grammatical meaning of the arbitration clause requires arbitration of any type
of legal dispute due to the quality or performance of Leander. See Lyons, 701 S.W.2d at 643. 
The underlying dispute involves damages allegedly sustained by Leander’s partial performance
under the contract. Prudential Securities, 909 S.W.2d at 899-900. In light of the policy favoring
arbitration, we resolve any doubt in favor of arbitration. Eddings, 838 S.W.2d at 880. We find
that Leander’s claims fall within the scope of the arbitration clause.
CONCLUSION
          Having concluded that the underlying dispute falls within the scope of the arbitration
clause, we hold that the court erred in denying the motion to stay litigation and compel arbitration. 
Leander’s point of error is sustained, and the trial court’s order denying arbitration is reversed and
the cause remanded with instructions that Leander's motion to compel arbitration be granted as
provided in Section 171.021 of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.
Code Ann. § 171.021.
 
 
                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
          (Justice Gray concurring)
Reversed and remanded with instructions
Opinion delivered and filed March 31, 1999
Publish