Francesco **CARLIN** and Compagnia Italiana Di Ricerca E Sviluppo S.R.L., Appellants,

v.

**3V INC.,** Appellee.

No. 14–96–00103–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 1996.

Rehearing Overruled Sept. 19, 1996.

John D. Norris, David J. Healey, Stephen L. Lundwall, for appellants.

Ronald Glenn Bliss, Houston, for appellee.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION

AMIDEI, Justice.

Francesco Carlin ("Carlin") and Compagnia Italiana Di Ricerca E Sviluppo S.R.L. ("CIRS") appeal from an interlocutory order of the trial court denying an application to compel arbitration. TEX. CIV. PRAC. & REM. CODE ANN. § 171.017(a)(1) (Vernon 1986 & Supp.1996). In six points of error, appellant contends the trial court erred in not compelling 3V Inc. to arbitrate. We reverse the judgment of the trial court and render judgment compelling arbitration and abating the cause pending arbitration.

Appellant Carlin and appellee's sister corporation, SIGMA, entered the contract in question on January 5, 1981 ("1981 Italian agreement"). Appellant Carlin is an Italian citizen and SIGMA is an Italian corporation. Appellee 3V Inc. is a Delaware corporation and both SIGMA and 3V Inc. are wholly owned subsidiaries of their parent corporation, 3V Partecipazioni Industriali S.p.A., an Italian corporation. All the companies manufacture, sell and distribute specialty chemical products. By the terms of the 1981 Italian agreement, Carlin was to furnish technical expertise with respect to the development of PVC suspendants. The product is named "Polivic" and is used in the manufacture of PVC and other plastic products. The 1981 Italian agreement terminated by its owns terms on December 31, 1985. At some uncertain date prior to December 31, 1985, SIGMA assigned the rights to sell, manufacture and distribute Polivic to 3V Inc., including those rights acquired by SIGMA under the 1981 Italian agreement. 3V Inc. sells Polivic in all states in the United States, including Texas.

After the 1981 Italian agreement expired on December 31, 1985, Carlin and others developed other PVC suspendants and obtained patents for them. Carlin sold these products in Europe under the names of "Hydrol," "Ecostab," and "Ethapol."

In 1986, SIGMA sued Carlin in Italy, alleging a breach of the 1981 Italian agreement. Thereafter, SIGMA and Carlin agreed to arbitrate the case in Italy pursuant to the arbitration clause in the contract. In 1991, the Italian arbitrators issued a ruling against Carlin and in favor of SIGMA, finding that Carlin did in fact breach the agreement and misappropriated trade secrets from SIGMA, which were used in the development of his new products. The arbitration award was set aside in court proceedings in Italy because the arbitrators' decision to bifurcate the issues of liability and damages rendered their decision invalid under Italian law. The suit between SIGMA and Carlin was resumed and is still pending.

Appellee's original petition in this suit alleged, as causes of action, breach of the 1981 Italian agreement, tortious interference of

existing and prospective contracts, unfair competition, misappropriation of and conversion of trade secrets, constructive fraud, breach of duty of good faith and fair dealing, and civil conspiracy. Appellee filed its amended petition after appellants filed their motion to compel arbitration. Appellee withdrew its claim of breach of contract from its amended petition but renewed its claims for tortious interference of existing and prospective contracts, unfair competition, misappropriation of trade secrets, and civil conspiracy. All of the appellee's claims are based on violations of the 1981 Italian agreement by appellants.

By the terms of the 1981 Italian agreement, Carlin contracted to furnish his technical expertise to SIGMA, which purports to give SIGMA "exclusive and final rights" to his "present and future technical know-how pertaining to production as well as application knowledge concerning the suspension and addition agents for PVC suspension field." Appellee alleges, in effect, that the terms of this contract precluded Carlin from thereafter developing and selling related technology in competition with appellee. The 1981 Italian agreement contains the following arbitration clause:

16. Any dispute concerning this agreement, its interpretation and execution, shall be assigned to a board of arbitration comprised of three arbitrators, friendly negotiators, of which one shall be appointed by each party and the third arbitrator, acting as President, shall be appointed upon agreement by the parties or, lacking such agreement, by the Chairman of the Bergamo Bar Association. The arbitrators shall decide "de bono and aequo" and without formality. Their verdict shall be binding and indisputable, since it represents the parties choice delegated to said arbitrators.

■ The proper standard of review on appeal from an interlocutory order concerning a motion to stay litigation and compel arbitration is the "no evidence" standard of review. *Hearthshire Braeswood v. Bill Kelly Co.*, 849 S.W.2d 380, 384 (Tex.App.—Houston [14th Dist.] 1993, writ denied). In reviewing "no evidence" or legal sufficiency points, the court considers only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding under attack, and disregards all evidence and inferences to the contrary. If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Id.* at 384. When, as in this case, there are no findings of fact and conclusions of law, we must affirm the judgment if there is evidence to support it upon any legal theory asserted by the prevailing party. *Id.* at 384.

The trial court conducted a hearing to decide whether to compel arbitration on the basis of the motion to compel arbitration filed by appellants, the response to the motion to compel filed by appellee, together with affidavit attached in support of the response (affidavit of Antonio Maggioni, president of 3V Inc.), and reply of appellants to appellee's response to the motion to compel arbitration. The trial court conducted a hearing which was limited to argument on the filed motions, pleadings and affidavits submitted by the parties; no evidence was presented at the hearing. The court reporter did not make a record of the oral argument. The trial court denied the motion to compel arbitration without specifying any grounds for the denial and lifted the stay of the pending litigation.

■ The trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992).

In sub-point A, reply point one, to appellants' points of error, appellee argues that there are no findings of fact and the record contains no request for findings of fact. Therefore, appellee asserts that any findings of fact and conclusions of law that would support the order are deemed to have been made.

Rule 42(a)(1), Rules of Appellate Procedure, provides in pertinent part:

(1) Appeals from interlocutory orders (when allowed by law) shall be accelerated. In appeals from interlocutory orders, no motion for new trial shall be filed. The trial judge need not file findings of fact and conclusions of law, but may file findings and conclusions within thirty days after the judgment is signed.

■ The trial court did not err by not filing findings of fact and conclusions of law in this interlocutory appeal from its order denying appellants' motion to compel arbitration under the Texas Arbitration Act. *See Smith Barney Shearson, Inc. v. Finstad,* 888 S.W.2d 111, 114 (Tex.App.—Houston [1st Dist.] 1994, no writ); TEX.R.APP. P. 42(a)(1). *Englander Co. v. Kennedy,* 428 S.W.2d 806 (Tex.1968) cited by appellee is not applicable. However, where no findings of fact are given, it will be presumed the trial court made all findings necessary to support the interlocutory order. *Dresser Industries, Inc. v. Forscan Corp.,* 641 S.W.2d 311, 316 (Tex.App.—Houston [14th Dist.] 1982, no writ); 6 RICHARD ORSINGER, MCDONALD TEXAS CIVIL APPELLATE PRACTICE § 18.10(c) (rev. 1992).

■ In sub-point B(2), reply point one, appellee argues that appellants cannot invoke arbitration under Section 171.002(a), Texas Civil Practices and Remedies Code (The Texas Arbitration Act) without showing that appellants complied with Section 171.022 concerning appellants' nonprofit tax status. In sub-point B(3), reply point one, appellee argues that appellants cannot invoke arbitration without first showing that the arbitration clause in the 1981 Italian agreement is a "domestic" agreement. In sub-point C, appellee argues that appellants have waived their right to arbitration because they "substantially invoked the judicial process prior to requesting arbitration." Appellee has waived his right to complain on appeal of these points because it did not raise these grounds in the trial court and asserts them now for the first time on this appeal. Rule 52(a) of the Texas Rules of Appellate Procedure provides in relevant part:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

Furthermore, appellee's sub-point B(2), reply point one, concerning no proof of tax status under Section 171.022, Texas Civil Practice and Remedies Code, has recently been overruled on the merits by the decision in *Holk v. Biard,* 920 S.W.2d 803, 807–08 (Tex.App.—Texarkana 1996, n.w.h.). We reject appellee's sub-points B(2), B(3), and C. *See Cadle Co. v. Estate of Weaver,* 897 S.W.2d 814, 816–17 (Tex.App.—Dallas 1994, writ denied), *cert. denied,* —— U.S. ——, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995).

■ In sub-point of error B(1), reply point one, appellee argues it was not a party to the 1981 Italian agreement and is not bound by it. Appellee denies the existence of an arbitration agreement on the grounds it was not a party to the contract. We disagree.

Appellee's entire cause of action arises out of the 1981 Italian agreement. Appellee asserts that all of SIGMA's rights in the 1981 Italian agreement were transferred to appellee by an assignment of that agreement to appellee. If there is such an assignment of rights in writing, the instrument making this assignment was not made part of the record in this case. However, appellee's first amended petition alleges "SIGMA transferred to 3V, Inc., the rights to manufacture, distribute, and sell Polivic in the United States...." The affidavit of Antonio Maggioni, attached to appellee's response to appellants' motion to lift the stay, reads in pertinent part:

"Obviously, the decision of the arbitrators in Italy regarding the provisions of the 1981 agreement would also be binding upon 3V Inc., since 3V Inc. received an assignment of the rights of 3V Partecipazioni Industriali S.p.A. under that agree-

ment, which assignment was made in the United States."

Appellee based its entire case on the rights it acquired from the 1981 agreement and would have no case if it did not exist. Appellee has alleged that appellants have breached the terms of the 1981 Italian agreement and have manufactured, sold and distributed products that utilized technology acquired under the terms of the 1981 Italian agreement. Appellee claims that appellants have misappropriated trade secrets and are engaging in various tortious acts, which constitute unfair competition. All of these claims sound in tort and arise out of the 1981 Italian agreement.

In *Merrill Lynch v. Eddings,* 838 S.W.2d 874 (Tex.App.—Waco 1992, writ denied), a settlor of a trust, Eddings, authorized his trustee to settle disputes by arbitration. The trustee, Payne, signed an account agreement with Merrill Lynch containing an arbitration clause. The settlor, Eddings, and the beneficiaries of the trust (two daughters of Eddings), did not sign the agreement and claimed they were not bound by it. The court of appeals found that the account agreement between Payne and Merrill Lynch was the "underlying basis for all of the claims" and the beneficiaries would have no claims had the account agreement never been signed by the trustee. The court found that the settlor and the beneficiaries were bound by the arbitration agreement and reasoned, "If the settlor and beneficiaries of a trust could bring suit independently of the trustee and thereby avoid the arbitration agreement, the strong state policy favoring arbitration would be effectively thwarted." *Id.,* at 879. The court cited as an analogous case, *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir. 1988).

The *J.J. Ryan* case involved a factual situation similar to this case. Ryan and affiliates of Rhone Poulenc Textile had entered into international arbitration agreements. Ryan sued the Rhone affiliates and the parent company, Rhone Poulenc, on the contracts that Ryan had made only with the affiliates. Rhone Poulenc, the parent company, was not a party to the distribution contracts but was willing to submit to arbitration under the contracts. Ryan contended that it had no

contractual relations with the parent company and the district court erred in referring its claims against the parent company to arbitration. The suit against the Rhone affiliates and the parent company had several claims sounding in tort.

The United States Court of Appeals for the Fourth Circuit noted that the federal policy in favor of arbitration applies "with special force in the field of international commerce," citing *Mitsubishi Motors v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985). The Fourth Circuit at 863 F.2d at 319 quoted the Supreme Court's holding in *Mitsubishi Motors,* in pertinent part:

[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

*Mitsubishi Motors,* 473 U.S. at 629, 105 S.Ct. at 3355.

The Fourth Circuit concluded:

When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement. As the Fifth Circuit explained under similar circumstances, "If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Sam Reisfeld & Son Import Company v. S.A. Eteco,* 530 F.2d 679, 681 (5th Cir.1976). The same result has been reached under a theory of *equitable estoppel. See McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co.,* 741 F.2d 342 (11th Cir.1984). (emphasis added)

*J.J. Ryan,* 863 F.2d at 320–21.

We have found no Texas or Federal case involving the identical fact situation presented in this case. Here, one of two sister

corporations, subsidiaries of the same parent company, assigned or transferred to the other, a contract with an international arbitration agreement. In both *Merrill Lynch v. Eddings* and *J.J. Ryan*, the claims of the nonsignatory party arose out of an agreement containing an arbitration clause and the nonsignatory would have no claim but for the underlying agreement.

In a similar fact situation, the United States Court of Appeals for the Eleventh Circuit held that a party was *equitably estopped* from asserting the lack of a written agreement as a defense. *Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753 (11th Cir.1993). In that case, Sunkist Growers, Inc., was the exclusive owner and licensor of the "Sunkist" trademark. General Cinema Corporation obtained the contractual right from Sunkist Growers to market and sell an orange soda under the "Sunkist" brand name. General Cinema created a wholly owned subsidiary known as Sunkist Soft Drinks to market and produce the soft drink. Sunkist Growers and Sunkist Soft Drinks entered into a license agreement, which contained an arbitration clause. Thereafter, Del Monte Corporation acquired Sunkist Soft Drinks and filed a declaratory judgment action against Sunkist Growers seeking a declaration that the performance of Sunkist Soft Drinks under the license agreement was subject to arbitration. Sunkist Growers filed a counterclaim sounding in tort and contract against Del Monte. Del Monte filed a motion to compel arbitration on the ground that Sunkist Growers was contractually obligated to arbitrate under the terms of the license agreement it made with Sunkist Soft Drinks. Sunkist Growers argued that it did not consent to nor intend to arbitrate any claims with Del Monte and that it had no written agreement with Del Monte.

The Eleventh Circuit Court of Appeals in *Sunkist* cited as authority *J.J. Ryan*, cited in this opinion, *McBro Planning & Dev. Co., v. Triangle Elec. Constr. Co., Inc.*, 741 F.2d 342 (11th Cir.1984) and *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir.1981). Sunkist argued that its claims against Del Monte sounded in tort and the court found that, "[i]t is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract," citing *McBro*, 741 F.2d at 344. *Sunkist*, 10 F.3d at 758.

Sunkist contended that Del Monte, through its management and operation of Sunkist Soft Drinks, caused Sunkist Soft Drinks to violate various terms and provisions of the license agreement. Each claim asserted by Sunkist made reference to the license agreement. Although Sunkist did not rely exclusively on the license agreement to support its claims, each claim presumed the existence of such an agreement. *Id.* at 758. The Eleventh Circuit concluded that each claim of Sunkist arose out of and related directly to the license agreement and the claims were "intimately founded in and intertwined with" the license agreement. The Eleventh Circuit concluded that Sunkist was *equitably estopped* from avoiding arbitration of its claims. *Id.* at 758.

*J.J. Ryan, McBro, Hughes,* and *Sunkist,* were all decided on the same ultimate fact, that each party must rely on the terms of the written agreement in asserting their claims. The focus of the inquiry in each of these cases was on the nature of the underlying claims asserted by the party resisting arbitration and to determine whether these claims were within the scope of the arbitration clause contained in the agreement. In *J.J. Ryan,* the parent company did *not have an assignment* of the contract involved, but the court found that the claims against the parent were based on the same facts and were "inherently inseparable," and that the case could be referred to arbitration even though the parent was not formally a party to the arbitration agreement. *J.J. Ryan,* 863 F.2d at 320–21.

In *Sunkist,* Del Monte had taken over Sunkist Soft Drinks by a stock buyout and there was no assignment of the arbitration agreement in that case from Sunkist Soft Drinks to Del Monte. Again the court found that all claims of Sunkist Growers against Del Monte arose out of and were directly related to the underlying agreement between Sunkist Growers and Sunkist Soft Drinks. Therefore, the court held Sunkist was es-

topped to assert its claims against Del Monte (the parent company) and was compelled to arbitrate. *Sunkist,* 10 F.3d at 758.

We find that the public policy of this State favors arbitration and that all the claims of 3V Inc. arise out of and are directly related to the 1981 Italian agreement. We find that 3V Inc. is bound by the arbitration clause in the 1981 Italian agreement and must arbitrate its claims against appellants. 3V Inc. is equitably estopped from avoiding arbitration of its claims against appellants. We overrule appellee's reply point one. We sustain appellants' general point of error and specific points of error one, two, three, four, five and six.

The judgment of the trial court is reversed, and judgment is rendered compelling arbitration in Italy according to the terms of the agreement and abating the cause pending arbitration.

ANDERSON, J., concurs in the result only.