NO. 07-03-0025-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 2, 2004



______________________________




ANTHONY LEON SUMMERS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 128TH DISTRICT COURT OF ORANGE COUNTY;



NO. A-010013-R; HONORABLE PATRICK A. CLARK, JUDGE



_______________________________




Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.



MEMORANDUM OPINION




 Appellant Anthony Leon Summers was convicted by a jury of the offense of felony
driving while intoxicated and punishment was assessed by the court at twelve years 
confinement. He challenges his conviction by two points of error asserting the evidence
is (1) legally insufficient and (2) factually insufficient to show he was intoxicated at the time
he operated a motor vehicle. We affirm.

 On the morning of April 6, 1999, Robert McNeil, a friend of appellant's, loaned his
car to appellant so that he could drive to work. At approximately 8:30 p.m., appellant
attempted to pass a car being driven by Debra Gregus while a truck pulling a boat was
approaching in the opposite lane. To avoid a major collision Gregus and the driver of the
truck swerved onto their respective shoulder roads; the boat, however, fishtailed and was
struck by the car appellant was driving. Appellant drove away and pursuant to a request
from the driver of the truck, Gregus followed him to get his license plate number. After
appellant stopped at a tattoo shop, Gregus recorded his license plate number, pulled up
beside his car, and informed him he needed to return to the scene of the accident. Gregus
returned to the scene, but appellant did not.

 The car driven by appellant had sustained a flat tire and enough damage to make
it immobile. While at the tattoo shop he telephoned McNeil to tell him he had been in an
accident and ask for a ride. The owner of the tattoo shop offered appellant a ride to
McNeil's home where appellant was residing at the time. When McNeil arrived at the tattoo
shop approximately 30 to 60 minutes later, appellant had already left with the shop owner.

 The Department of Public Safety dispatched a trooper to a hit and run scene at 8:43
p.m. and while en route, he located the abandoned car appellant had been driving still
parked at the tattoo shop. He observed fresh damage to the car and upon closer
inspection discovered full and empty beer bottles inside. He interviewed Gregus, who had
returned to the tattoo shop, and was told she had seen appellant driving the car while
intoxicated. The trooper also interviewed the owner of the tattoo shop who informed him
that he had driven appellant to a particular address. McNeil then arrived at the tattoo shop
and gave a statement to the trooper in which he stated that appellant had been driving his
car. After the interviews the trooper proceeded to the scene to investigate. After securing
the scene, he drove to McNeil's residence to interview appellant.

 McNeil gave the trooper permission to enter his residence. Upon entry, they
discovered appellant on the telephone in an angry and intoxicated condition. He had
scratches with fresh blood on his face that had not yet scabbed. The trooper searched
garbage cans, the icebox, and other general areas, but found no alcoholic beverages. 
After the trooper determined appellant was intoxicated, he arrested him. 

 Appellant challenges the legal and factual sufficiency of the evidence to show he
was intoxicated at the time he was driving. We disagree. When both the legal and factual
sufficiency of the evidence are challenged, we must first determine whether the evidence
is legally sufficient to support the verdict. Clewis v. State, 922 S.W.2d 126, 133
(Tex.Cr.App. 1996). It is a fundamental rule of criminal law that one cannot be convicted
of a crime unless it is shown beyond a reasonable doubt that the defendant committed
each element of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann.
art. 38.03 (Vernon 2000); Tex. Pen. Code Ann. § 2.01 (Vernon 1994). In conducting a
legal sufficiency review, we must determine whether, after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318,
99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157
(Tex.Cr.App. 1991), overruled on other grounds, Paulson v. State, 28 S.W.3d 570, 573
(Tex.Cr.App. 2000). As an appellate court, we may not sit as a thirteenth juror, but must
uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum
of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

 After conducting a legal sufficiency review under Jackson, we may proceed with a
factual sufficiency review. Clewis, 922 S.W.2d at 133. As an appellate court, we view all
the evidence without the prism of "in the light most favorable to the prosecution" and set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. Johnson v. State, 23 S.W.3d 1, 9 (Tex.Cr.App. 2000). It is
the exclusive province of the jury to determine the credibility of the witnesses and the
weight to be given their testimony, and unless the record demonstrates a different result
is appropriate, we must defer to the jury's determination. Id. at 8. 

 Before determining whether the evidence is legally sufficient to sustain the
conviction, we must review the essential elements the State was required to prove. A
person commits the offense of driving while intoxicated if the person is intoxicated while
operating a motor vehicle in a public place. Tex. Pen. Code Ann. § 49.04(a) (Vernon
Supp. 2004). 

 By his brief, appellant concedes he became intoxicated after the accident occurred. 
The evidence, however, shows otherwise, and a witness need not be an expert in order
to express an opinion on whether a person is intoxicated. Vaughn v. State, 493 S.W.2d
524, 525 (Tex.Cr.App. 1972). Gregus testified that she followed the car driven by appellant
to the tattoo shop and, after noting his license plate number, pulled up beside his car and
observed that he was intoxicated. She testified he had glassy bloodshot eyes and slurred
speech. When questioned why she believed appellant to be intoxicated, she responded,
"I've seen quite a few intoxicated people."

 The owner of the tattoo shop testified that when he encountered appellant he was
intoxicated. Appellant told the shop owner he had been run off the road and needed help
getting home which he interpreted to mean that appellant was alone and had been driving
the car. He also said appellant was disoriented, had slurred speech, trouble maintaining
his balance, and smelled of alcohol. Based on the testimony presented by Gregus and the
tattoo shop owner, the evidence is sufficient to show that appellant was operating the car
while intoxicated at the time of the accident. Point of error one is overruled.

 Concluding that the evidence is legally sufficient to support the conviction, we must
now determine, after a neutral review of all the evidence, whether it is factually sufficient
to support the verdict. Johnson, 23 S.W.3d at 11. It is the exclusive province of the fact
finder to determine the credibility of the witnesses and the weight to be given their
testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v.
State, 958 S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

 The State established that the car appellant was driving contained full and empty
beer bottles. Additionally, upon his search of McNeil's residence, the trooper did not find
any evidence that appellant had become intoxicated there. Furthermore, McNeil testified
that based on the telephone conversation with appellant immediately following the
accident, he believed him to be intoxicated. Specifically, he testified:

 A. Oh, yeah, he was intoxicated.

 Q. Why do you say that?

 A. I know Tony.

* * *


 A. Tony kind of gets a little bit loud and, you know, acts kind of silly; and he's
probably like everybody else when they get drunk. You know, you act goofy
and, you know -

 Q. Okay.

 A. - that's - I just know he was drinking and I know he was drunk and I - I
just know that.


 Appellant testified in his own defense and denied driving McNeil's car at the time it
was in the accident. He also claimed his intoxicated-like appearance was the result of
medications. However, the jury, as the exclusive judge of the facts and credibility of the
witnesses, was free to believe or disbelieve the testimony of any witness. Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon Pamph. Supp. 2004); Adelman v. State, 828 S.W.2d 418,
421 (Tex.Cr.App. 1992). After a neutral review of all the evidence, we conclude it is
factually sufficient to support appellant's conviction. Point of error two is overruled.

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Do not publish.


 


 

 



ecause the language requires arbitration of "any and all disputes"
between the parties in addition to disputes arising out of or related to the Franchise
Agreement. For the reasons set out hereafter, we need not determine if the claims arise
out of or are related to the Agreement.

 In the absence of an allegation of ambiguity in the contract language, the instrument
alone will be deemed to express the intent of the parties. See Exxon Corp. v. West Tex.
Gathering Co., 868 S.W.2d 299, 302 (Tex. 1993). A contract should be construed as a
whole, attempting to give effect to all contract provisions so that none will be rendered
meaningless. See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464
(Tex. 1998). Separate contracts between the same parties executed at the same time and
pertaining to the same transaction are generally construed together. See DeWitt County
Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999); Jim Walter Homes, Inc. v.
Schuenemann, 668 S.W.2d 324, 327 (Tex. 1984). A contract is construed in accordance
with the plain meaning of its language, unless it definitely appears from the writing as a
whole that the intention of the parties would be defeated by such a procedure. See Parks,
1 S.W.3d at 101. 

 The plain, unambiguous language of the arbitration provision before us provides for
arbitration of all disputes between ESI and Mr. Payroll with specific exceptions for actions
with regard to ownership or use of Proprietary Marks or fees to be paid under a specified
section of the Agreement. ESI offers no authority for its argument that the language "any
and all disputes" does not mean what it clearly says: all disputes involving these parties,
with specified exceptions, none of which apply to the current dispute. Nor does ESI offer
authority for its assertion that the language is not broad enough to cover this specific
dispute arising out of duties and obligations created during the course of business
dealings involving check cashing operations and locations, which are the bases of ESI's
relationship with Mr. Payroll and Cash America. See Parks, 1 S.W.3d at 102. And, we
have previously addressed and discounted ESI's argument that the dispute is outside the
scope of the arbitration provision because Toot 'N Totum is, should be, or could be
involved. We conclude that the dispute is within the scope of the arbitration provision. 


 Finally, we consider ESI's argument that the venue provision in the Assignment
removes this dispute from the arbitration provision, even if the dispute would otherwise fall
within the scope of the provision. See Point Lookout West, Inc. v. Whorton, 742 S.W.2d
277, 278 (Tex. 1987). The language of the venue provision does not reference or purport
to be an amendment to the section of the Franchise Agreement entitled "Resolution of
Disputes," the subsection entitled "Arbitration," nor the specific language of the arbitration
provision. The venue provision is part of a single sentence which includes choice of law
and forum selection language. The sentence selects the law of the state in which the
premises are located as the law to be used in construing the Assignment, and designates
the location for dispute resolution as the county in which the premises are located. 
Reasonably construed together with the Amended and Restated Franchise Agreement
which was to be effective on the same date as the Assignment, the provision does not
prescribe how disputes are to be resolved, only where. See In re Winter Park Constr.,
Inc., 30 S.W.3d 576, 578 (Tex.App.--Texarkana 2000, orig. proceeding). We conclude that
the venue provision in the Assignment does not contradict language of the arbitration
provision nor does it remove disputes from the scope of the provision. 

CONCLUSION

 The claims asserted by ESI in its Original Petition are within the scope of the
arbitration provision in the Amended and Restated Franchise Agreement executed by ESI
and Mr. Payroll as principals and Cash America as guarantor. The Order of the trial court
denying the motion of Mr. Payroll and Cash America to abate ESI's suit and order the
parties to arbitration is vacated. The cause is remanded to the trial court for further
proceedings in accordance with this opinion. 


 Phil Johnson

 Justice



Quinn, J., concurring


Publish. 



NO. 07-02-0077-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



MAY 29, 2002



______________________________




CASH AMERICA INTERNATIONAL, INC.


AND MR. PAYROLL CORPORATION, 



 Appellants


v.



EXCHANGE SERVICES, INC., 


 

 Appellee


_________________________________



FROM THE 320th DISTRICT COURT OF POTTER COUNTY;



NO. 89151-D; HONORABLE DON EMERSON, JUDGE



_______________________________



Concurring Opinion


_______________________________



 I concur in the majority's opinion and disposition but write to specifically address a
contention Exchange Services, Inc. made at oral argument. There, it asserted that
because the parties agreed via paragraph 23.0 of the franchise agreement that "nothing
in this [franchise] agreement shall terminate or otherwise affect any lease of real property
that relates to the Existing Franchises," the arbitration clause contained in the franchise
agreement has no "affect" upon disputes arising under the lease. (Emphasis added). 
Assuming arguendo that the passage "or otherwise affect any lease" could be read as
encompassing disputes or litigation involving duties imposed by the lease, I note that the
claims of Exchange Services are founded on more than just the lease. For instance, it also
seeks to enforce obligations purportedly assumed by Mr. Payroll Corporation under the
Assignment and Assumption of Lease and Estoppel Certificate agreement. The latter,
more importantly, is mentioned nowhere in paragraph 23.0. Thus, any purported immunity
from arbitration created by paragraph 23.0 does not encompass those disputes implicating
or arising under the agreement to assign the lease. 


 Brian Quinn

 Justice 


 Publish
1. Cash America signed the Franchise Agreement only as guarantor, and was not
included in the term "Franchisor" as used in the arbitration provision. ESI does not
contend that its claims against Cash America are not subject to the arbitration provision
on the basis that Cash America was not included in the term "Franchisor." See, e.g.,
ANCO Ins. Servs. of Houston, Inc. v. Romero, 27 S.W.3d 1, 5 (Tex.App.--San Antonio
2000, pet. denied); Carlin v. 3V Inc., 928 S.W.2d 291, 294-97 (Tex.App.--Houston [14th
Dist.] 1996, no writ); Merrill Lynch, Pierce, Fenner & Smith v. Eddings, 838 S.W.2d 874,
879 (Tex.App.--Waco 1992, writ denied).