**AFFIRM; and Opinion Filed June 21, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00498-CV

**COLIN SHILLINGLAW, Appellant**

**V.**

**BAYLOR UNIVERSITY, DR. DAVID E. GARLAND IN HIS OFFICIAL CAPACITY AS INTERIM PRESIDENT OF BAYLOR UNIVERSITY, REAGAN RAMSOWER, JAMES CARY GRAY, RONALD D. MURFF, DAVID H. HARPER, DR. DENNIS R. WILES, AND PEPPER HAMILTON, LLP, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-01225**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Schenck
Opinion by Justice Schenck

Colin Shillinglaw appeals the trial court's orders dismissing his claims against appellees and awarding them their attorney's fees pursuant to the Texas Citizens' Participation Act (TCPA). In his first issue, Shillinglaw contends the dismissal orders should be reversed because the case should have been sent to arbitration. In his second issue, Shillinglaw urges the Federal Arbitration Act (FAA) preempts the TCPA because, as applied here, the TCPA discriminated against arbitration. In his third issue, Shillinglaw argues the trial court erred by ordering him to pay unreasonable attorney's fees to appellees under the TCPA. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

In 2008, appellee Baylor University (Baylor) hired Shillinglaw to be its Director for Football Operations. In 2015, Baylor hired appellee Pepper Hamilton to perform an investigation of the handling of reports of sexual assault and harassment at Baylor. Pepper Hamilton's investigation included interviewing Shillinglaw. In May 2016, Pepper Hamilton presented its findings to Baylor's Board of Regents. Baylor suspended and later terminated Shillinglaw's employment.

On January 31, 2017, Shillinglaw sued Baylor, Dr. David E. Garland as interim president of Baylor, Dr. Reagan Ramsower,[1] James Cary Gray, Ronald D. Murff, David H. Harper, Dr. Dennis R. Wiles,[2] and Pepper Hamilton, in Dallas County asserting claims of libel, slander, tortious interference with existing contract, aiding and abetting, conspiracy, ratification, and retraction. In March, appellees filed separate motions to dismiss Shillinglaw's claims pursuant to the TCPA and to recover their court costs, attorney's fees, and litigation expenses. On April 3, ten days before the hearing set on appellees' motions to dismiss, Shillinglaw moved to continue the hearing. Days later, Shillinglaw moved to non-suit his claims in the trial court, which issued an order granting his nonsuit, leaving only appellees' claims for costs, attorney's fees, and other defense expenses related to their motions to dismiss.

On April 10, Shillinglaw filed a separate suit in McLennan County asserting similar claims against Baylor alone. Shillinglaw requested that the McLennan County court order the parties to arbitration pursuant to an arbitration agreement in his employment contract with Baylor. Meanwhile, in the Dallas County case, Shillinglaw filed a response to appellees' motions to dismiss, in which he referenced (and to which he attached) the McLennan County petition and

[1] Appellee Dr. Ramsower was head of Baylor's Department of Public Safety and responsible for handling any student complaints.

[2] Appellees Gray, Murff, Harper, and Dr. Wiles are members of the Board of Regents of Baylor.

–2–

argued the McLennan County court should be permitted to compel arbitration. He did not, however, request that the Dallas County trial court compel arbitration.

On April 13, the Dallas County trial court conducted a hearing on appellees' motion to dismiss, at which Shillinglaw confirmed he had not filed a written request to compel arbitration. The trial court granted the motions to dismiss and dismissed Shillinglaw's claims against appellees with prejudice and set another hearing to receive evidence regarding the award of costs and reasonable attorney's fees. Before the hearing on costs and attorney's fees, Shillinglaw filed a motion to reconsider, in which he requested the trial court reconsider its orders granting the motions to dismiss, award Shillinglaw court costs and reasonable attorney's fees, and refer the case to arbitration. Following the hearing on costs and attorney's fees, the trial court denied Shillinglaw's motion to reconsider and awarded appellees attorney's fees. This appeal followed.[3]

### DISCUSSION

## I. Arbitration

### A. Compelling Non-Signatories to Arbitration

In his first issue, Shillinglaw contends the Dallas County trial court erred by failing to order the claims to arbitration. In his second issue, Shillinglaw urges the FAA preempts the TCPA because, as applied here, the TCPA discriminated against arbitration. As part of his first and second issues, Shillinglaw urges that although only Shillinglaw and Baylor are signatories to the arbitration agreement at issue, the remaining non-signatory appellees should also be compelled to arbitration.

We begin with the foundational principle that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that he has not agreed so to submit. *AT &*

---

[3] Shillinglaw appealed the trial court's orders dismissing his claims against appellees. In a separate notice of appeals, he appealed the trial court's orders, inter alia, denying his motion to reconsider and awarding appellees their attorney's fees. On a joint motion from appellees, this Court consolidated the two appeals.

*T Techs., Inc. v. Commc'ns. Workers of Am.,* 475 U.S. 643, 648 (1986). A party seeking to compel arbitration under the FAA must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex. App.—Dallas 2013, no pet.).

The United States Supreme Court has repeatedly emphasized that arbitration is a matter of consent, not coercion, that the FAA does not require parties to arbitrate when they have not agreed to do so, and its purpose is to make arbitration agreements as enforceable as other contracts, but not more so. *Roe v. Ladymon*, 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.) (citing *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293 (2002); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479 (1989); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12 (1967)).

As in other contracts, non-signatories are normally not bound by arbitration agreements with others. *Id.* at 511. But non-signatories to a contract containing an arbitration clause may be allowed or required to arbitrate if rules of law or equity would apply the contract to them generally. *Id.* Accordingly, we will now examine whether any rules of law or equity would bind any of the non-signatory appellees to Shillinglaw's employment contract.

Shillinglaw argues the non-signatory appellees were bound in their capacities as employees or agents of Baylor under the doctrine of *respondeat superior*. He urges that Baylor's interim president Dr. Garland and its senior vice president and CFO Dr. Ramsower had or have a "close connection to Baylor" that means that the claims against them are intertwined such that arbitration is appropriate. Shillinglaw avers the appellee members of the Baylor Board of Regents have an even closer relationship than that of employer and employee, that they are the human agents through which the university acts. Shillinglaw urges that Pepper Hamilton was acting as Baylor's

agent when it carried out the acts and omissions complained of by Shillinglaw and argues the doctrine of *respondeat superior* should apply here to bind Pepper Hamilton.

Under the doctrine of *respondeat superior*, an employer or principal may be vicariously liable for the tortious acts of any employee or agent acting within the scope of his or her employment or agency, even though the principal or employer did not itself commit a wrong. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 541–42 (Tex. 2002). It is the right of control that justifies imposing liability on the employer for the actions of the employee or agent. *See id.* at 542. Shillinglaw, however, urges that the non-signatories are employees or agents who must be bound by the actions of their employer, rather than employers who must be bound by the actions of their agents or employees. Thus, we find his arguments regarding *respondeat superior* inapposite. *See id.* We next address his arguments regarding the non-signatory appellees as agents of signatory Baylor.

Shillinglaw relies on an opinion from another court of appeals for the proposition that when the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement. *Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 104 (Tex. App.—San Antonio 2016, no pet.). However, the *Bray* decision is distinguishable because the San Antonio Court of Appeals held that the individual defendants could compel arbitration against the plaintiff where all individual parties had signed membership applications, in which each applicant agreed to be bound by an organization's policies, which included a binding arbitration provision. *See id.* The *Bray* decision does not suggest that the plaintiff could have compelled arbitration against the defendants merely because they were employed as agents of the signatory organization. *C.f. id.*

Shillinglaw further cites authority applying principles of equitable estoppel to argue that his claims against the non-signatories are so factually intertwined with his claims against Baylor

–5–

as to subject them to arbitration.[4]  To be sure, estoppel principles may require a non-signatory to arbitrate if it seeks through its claim to obtain a direct benefit from the contract containing the arbitration clause.  *Ladymon*, 318 S.W.3d at 520.  Conversely, allowing willing non-signatories to compel arbitration with a party to the arbitration agreement simply precludes a signatory from avoiding arbitration with a party when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.  *See, e.g.*, *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762–63 (Tex. 2006) (per curiam) (signatory plaintiff resisted arbitration while non-signatory defendants sought to hold signatory plaintiff to agreement to arbitrate).  In that situation, all parties to the requested arbitration have agreed to forego their right to a judicial forum.  Reversing the situation, as Shillinglaw proposes, to require an unwilling non-signatory to arbitrate is no small matter of procedural convenience.  It would carry serious constitutional implications and undermine the core consensual nature of the federal arbitration act.  *E.g.*, *Volt Info. Scis., Inc.,* 489 U.S. at 479; *Ladymon*, 318 S.W.3d at 520 (holding evidence that non-signatory defendant signed contract as an agent was insufficient to permit signatory plaintiff to "estop" non-signatory defendant from refusing to arbitrate because there was no evidence non-signatory defendant ever agreed to arbitrate).[5]

The present case illustrates the "reverse" situation where the non-signatories appellees do not want to arbitrate Shillinglaw's claims against him individually, and there is no evidence they agreed to do so in the employment contract containing the arbitration agreement, by conduct

---

[4] *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (discussing the Eleventh Circuit's application of equitable estoppel to allow a non-signatory to compel arbitration against a signatory); *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 107 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding non-signatory contractor could compel arbitration against signatory school district where non-signatory contractor purchased signatory contractor and signatory school district sued non-signatory contractor under contract with signatory contractor).

[5] The federal constitution assures the right to petition the government for redress of grievances in the First Amendment.  *See Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983) (recognizing access to courts protected by First Amendment right to petition for redress of grievances); *see also* TEX. CONST. art. I, § 27 (right to petition for redress of grievances).

claiming rights under it, or in the course of this proceeding. *See Ladymon*, 318 S.W.3d at 520. Put simply, there is no basis to estop the non-signatories from resorting to the judicial forum because they never agreed to arbitrate, nor did they assert any claims arising from the employment contract. *See id.*; *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 780 (2d Cir. 1995) (applying FAA and rejecting right to compel non-signatories to arbitration); *c.f. MiCocina, Ltd. v. Balderas-Villanueva*, 05-16-01507-CV, 2017 WL 4857017, at *4 (Tex. App.—Dallas Oct. 27, 2017, no pet. h.) (mem. op.) (non-signatory employee signed acknowledgement of receipt of agreement to arbitrate, thus establishing valid agreement to arbitrate); *Carlin v. 3V Inc.*, 928 S.W.2d 291, 295 (Tex. App.—Houston [14th Dist.] 1996, no writ) (non-signatory's claims arose out of agreement containing arbitration clause and non-signatory would have no claim but for underlying agreement).

We conclude the non-signatory appellees could not be compelled to arbitration on this record. We now address whether the trial court erred by failing to order Shillinglaw's claims against signatory Baylor to arbitration.

### B. *Shillinglaw Waived Arbitration*

In his first issue, Shillinglaw contends the Dallas County trial court erred by failing to order the claims to arbitration.

Baylor urges that the record in this matter establishes Shillinglaw pursued litigation and waited to invoke the arbitration agreement in his employment contract until it was clear he faced not only dismissal with prejudice of his claims but also an award of attorney's fees. After appellees filed motions to dismiss seeking attorney's fees, Shillinglaw non-suited his claims, informing the Dallas County court that this act extinguished the case or controversy. When appellees responded that Shillinglaw's non-suit had no effect on their motions to dismiss and right to attorney's fees and sanctions, Shillinglaw attempted to invoke the arbitration agreement, but he did so by filing a

new suit against Baylor in McLennan County.[6] It was not until a week after the Dallas County trial court dismissed his claims with prejudice that Shillinglaw filed a motion to reconsider, in which he—for the first time—made a written request that the Dallas County court compel arbitration. This first written request thus arrived after Shillinglaw chose to file suit in Dallas, resisted merits dismissal, filed suit in McLennan County and sought arbitration there, and terminated the Dallas case on its merits by filing a non-suit.

The FAA requires a party to file a written motion to the trial court to compel the parties to arbitration, as well as notice to the parties. *See* 9 U.S.C. § 4, 6. Shillinglaw urges that by attaching to his responses to appellees' motions to dismiss a copy of his petition in McLennan County—that explicitly requested that the court in McLennan County (not the trial court in Dallas County) order the parties to arbitration—he made a written request to the Dallas County court for arbitration. In fact, in his response, Shillinglaw took the position that the Dallas County court "is not in a position any longer to make a legal award—the McLennan County District Court (which is the proper venue for arbitration) is the court with jurisdiction to order the parties to arbitration." Thus, Shillinglaw opposed the Dallas County court proceeding at all and did not make a written request for an order from the Dallas County court to refer the case to arbitration.[7]

At the hearing on appellees' motions to dismiss, Shillinglaw made an oral request to refer the case to arbitration, not a written motion required by the FAA.[8] *See* 9 U.S.C. § 4, 6. In fact, the first time Shillinglaw made a written motion requesting the Dallas County court compel arbitration was in his motion to reconsider, which he filed after he non-suited his claims and after the trial

---

[6] *See Duchouquette v. Prestigious Pets, LLC*, 05-16-01163-CV, 2017 WL 5109341, at *3 (Tex. App.—Dallas Nov. 6, 2017, no pet.) (mem. op.) (holding plaintiff's nonsuit will not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief such as a defendant's TCPA motion to dismiss").

[7] Further, we note his request in the McLennan County case was limited to his claims against Baylor because that is the only party he sued in the McLennan County case.

[8] In Shillinglaw's sur-reply to appellees' reply to his response to their motions to dismiss, he prayed the trial court stay the proceedings in Dallas County and allow arbitration to proceed in McLennan County.

court signed orders granting appellees' motions to dismiss his claims with prejudice. Therefore, by the time Shillinglaw requested that the trial court compel his claims to arbitration, he had already voluntarily non-suited his claims against appellees and thus the trial court lacked jurisdiction to compel those claims to arbitration. *See City of Dallas v. Albert*, 354 S.W.3d 368, 375 (Tex. 2011) (jurisdiction as to claim lost when claim timely non-suited); *Patton Boggs LLP v. Moseley*, 394 S.W.3d 565, 572 (Tex. App.—Dallas 2011, no pet.) ("Because the only proceeding before the trial court was a rule 202 petition, the trial court had no jurisdiction to grant a motion to compel arbitration absent an agreement between the parties that the motion should be granted."). He also failed to seek arbitration in the trial court until after an adverse result. *See Haddock v. Quinn*, 287 S.W.3d 158, 180 (Tex. App.—Fort Worth 2009, pet. denied) ("Indeed, failing to seek arbitration until after proceeding in litigation to an adverse result is the clearest form of inconsistent conduct and is inevitably found to constitute substantial invocation of the litigation process resulting in waiver.").

We overrule Shillinglaw's first issue.

In his second issue, Shillinglaw urges the FAA preempts the TCPA because, as applied here, the TCPA discriminated against arbitration. Because Shillinglaw failed to effectively present his request for arbitration to the Dallas County court, we need not address Shillinglaw's second issue. *See* TEX. R. APP. P. 47.4.

## II. Reasonableness of Appellees' Attorney's Fees

In his third issue, Shillinglaw complains the trial court's award of attorney's fees to appellees was unreasonable.

The TCPA requires an award of reasonable attorney's fees to the successful movant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (mandating award of court costs, reasonable attorney's fees, and other defense expenses incurred, as well as sanctions trial court determines

–9–

sufficient to deter plaintiff from bringing similar actions); *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). A "reasonable" attorney's fee is one that is not excessive or extreme, but rather moderate or fair. *Id.* That determination rests within the court's sound discretion, and its judgment will not be reversed on appeal absent a clear abuse of discretion. *Avila v. Larrea*, 506 S.W.3d 490, 494 (Tex. App.—Dallas 2015, pet. denied).

At the hearing on attorney's fees, counsel for Baylor, Dr. Garland, and Dr. Ramsower (Baylor appellees), Gray, Murff, Harper, and Wiles (Regents), and Pepper Hamilton presented evidence of their fees, costs, and expenses in the form of testimony by their attorneys and their affidavit. All the appellees also provided the trial court with their attorneys' time records for the work performed. Their attorneys' affidavits each asserted the work "was reasonable and necessary in the defense of the lawsuit against" the appellees. The trial court made the following awards: $133,989.50 to the Baylor appellees;[9] $143,100 the Regents;[10] and $48,621.04 to Pepper Hamilton.[11]

In support of his challenge to the awards to appellees, Shillinglaw does not challenge the sufficiency of the evidence of attorney's fees, the qualifications of the attorney witnesses, or the rates charged. Instead, he argues the fees were excessive because the evidence reflects the appellees' attorneys participated in joint strategy sessions and conferences. Shillinglaw urges, "It is unconscionable to expect that, when any of Appellees' attorneys have a telephone conference with co-counsel, the trial court would rule that such fees are reasonable and that Shillinglaw should pay for both (or, in some cases multiple) attorneys' time." He also points to the short duration of

---

[9] Although the Baylor appellees requested $165,257.50, the trial court only awarded $133,989.50.

[10] Although the Regents requested $236,775, the trial court only awarded $143,000.

[11] The trial court awarded to Pepper Hamilton the amount it requested.

the litigation—approximately two months—and limited number of filings by appellees' counsel as reasons why the fee awards should be reversed as excessive.

Shillinglaw's argument that the trial court should not have awarded any amounts related to joint strategy sessions or conferences between appellees' attorneys relies on the opinion of *El Apple I, Ltd. v. Olivas*, in which the supreme court held that charges for duplicative, excessive, or inadequately documented work should be excluded. 370 S.W.3d 757, 762 (Tex. 2012). However, Shillinglaw's argument ignores the fact that the conferences were between counsel for different clients. Shillinglaw has not offered, and we have not found, any authority that litigants represented by separate counsel should not be awarded their own attorney's fees. Nor do we find any support for Shillinglaw's argument in the text of the statute where the statute provides for an award to the moving party, as well as sanctions against the party who brought the legal action. *See* CIV. PRAC. & REM. § 27.009(a).[12]

As for Shillinglaw's arguments regarding the short length of litigation and few filings by appellees' counsel, we note that, as detailed below, appellees' counsel were required to respond to numerous filings by Shillinglaw, and, in the case of the Baylor appellees and the Regents, to represent multiple clients. The attorneys representing all appellees performed defensive work for them, including the following:

- Investigated Shillinglaw's claims;

- Answered Shillinglaw's petition;

- Filed their motion to dismiss pursuant to the TCPA;

---

[12] If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:

(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

(2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

CIV. PRAC. & REM. § 27.009(a).

- Responded to Shillinglaw's motions for limited discovery;

- Attended the hearing on their motion to dismiss;

- Filed a motion for protection and to quash subpoenas for attendance at the hearing on attorney's fees; and

- Attended the hearing on attorney's fees.

In addition to the foregoing defensive work, the Baylor appellees' attorneys filed a reply in support of their motion to dismiss, responded to Shillinglaw's motion to reconsider, and responded by letter to Shillinglaw's letter regarding the recent opinion from the Supreme Court on whether the FAA preempted the TCPA. The Regents' attorneys also prepared for and attended a hearing on Shillinglaw's request for a temporary order enjoining the Regents and their attorneys from discussing the lawsuit publicly; filed a reply in support of their motion to dismiss; and responded to Shillinglaw's motion to reconsider.

We conclude Shillinglaw has failed to establish—and that record does not show—the trial court abused its discretion in its award of attorney's fees, court costs, and litigation expenses to appellees. Accordingly, we overrule Shillinglaw's third issue.

## CONCLUSION

We affirm the trial court's judgment.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE


170498F.P05

–12–



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

COLIN SHILLINGLAW, Appellant

No. 05-17-00498-CV     V.

BAYLOR UNIVERSITY, DR. DAVID E.
GARLAND IN HIS OFFICIAL
CAPACITY AS INTERIM PRESIDENT
OF BAYLOR UNIVERSITY, ET AL.,
Appellee

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-01225.
Opinion delivered by Justice Schenck,
Justices Bridges and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees BAYLOR UNIVERSITY, DR. DAVID E. GARLAND IN HIS OFFICIAL CAPACITY AS INTERIM PRESIDENT OF BAYLOR UNIVERSITY, REAGAN RAMSOWER, JAMES CARY GRAY, RONALD D. MURFF, DAVID H. HARPER, DR. DENNIS R. WILES, AND PEPPER HAMILTON, LLP recover their costs of this appeal and the full amount of the trial court's judgment from appellant COLIN SHILLINGLAW and from the cash deposit in lieu of supersedeas bond. After the judgment and all costs have been paid, the District Clerk of Dallas County is directed to release the balance, if any, of the cash deposit in lieu of supersedeas bond to COLIN SHILLINGLAW.

Judgment entered this 21st day of June, 2018.